Vern Schooley (California Bar No. 40301)
  *vschooley@fulpat.com*
James Juo (California Bar No. 193852)
  *jjuo@fulpat.com*
FULWIDER • PATTON LLP
6060 Center Drive, 10th Floor
Los Angeles, CA  90045
Telephone:  (310) 824-5555
Facsimile:   (310) 824-9696

Matthew J.M. Prebeg (Texas Bar No. 00791465)
  *mprebeg@pfalawfirm.com*
Stephen W. Abbott (Texas Bar No. 00795933)
  *sabbott@pfalawfirm.com*
Matthew S. Compton, Jr. (Texas Bar No. 24078362)
  *mcompton@pfalawfirm.com*
PREBEG, FAUCETT & ABBOTT PLLC
8441 Gulf Freeway, Suite 307
Houston, Texas  77017
Telephone:  (832) 742-9260
Facsimile:   (832) 742-9261

Attorneys for Plaintiff, Johnson Safety, Inc.

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNSON SAFETY, INC., ) <br><br> Plaintiff, ) <br><br> vs. ) <br><br> VOXX INTERNATIONAL CORPORATION, ) <br> VOXX ELECTRONICS CORPORATION, and ) <br> INVISION AUTOMOTIVE SYSTEMS INC., ) <br><br> Defendants. ) | CASE NO. _____ <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **35 U.S.C. § 271** <br><br> **Jury Trial Demanded** |

COMPLAINT

Plaintiff Johnson Safety, Inc., for its Complaint against Defendants Voxx International Corporation, Voxx Electronics Corporation, and Invision Automotive Systems Inc., alleges as follows:

## THE PARTIES

1.    Plaintiff Johnson Safety, Inc., (hereinafter "Johnson Safety" or "Plaintiff") is a California Corporation with its corporate headquarters and principal place of business at 1425 Cooley Ct., San Bernardino, CA 92408.

2.    Upon information and belief, Voxx International Corporation, previously known as Audiovox Corporation (hereinafter "Voxx" or "Audiovox"), is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 180 Marcus Blvd., Hauppauge, NY 11788. Voxx is also a registered corporation with the California Secretary of State and may be served with process by serving its California registered agent: Corporation Service Company, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833.

3.    Upon information and belief, Voxx Electronics Corporation, previously known as Audiovox Electronics Corporation (hereinafter "VEC" or "AEC") is a wholly-owned subsidiary of Defendant Voxx International Corporation, and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 150 Marcus Blvd., Hauppauge, NY 11788.  VEC is also a registered corporation with the California Secretary of State and may be served with process through its California registered agent: Corporation Service Company, doing business as CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833.

4.    Upon information and belief, Invision Automotive Systems Inc. (hereinafter "Invision") is a wholly-owned subsidiary of Defendant Voxx International Corporation, and is a Delaware corporation, with its principal place

COMPLAINT

of business at 150 Marcus Blvd., Hauppauge, NY  11788.  Invision is also a registered corporation with the California Secretary of State and may be served with process by serving its California registered agent: Corporation Service Company, doing business as CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833.

5.     Upon information and belief, Voxx, VEC and Invision, by virtue of their corporate relationship with one another (e.g., the parent-subsidiary-affiliate relationship, as well as from a corporate governance perspective), each shared the same knowledge with respect to the patents-in-suit.  Examples of this include, Thomas C. Malone who serves (or has served) as the President of Voxx Electronics Corp., the Senior Vice President of Sales of Voxx International Corporation, the President of Audiovox Electronics Corporation, a subsidiary of Voxx International Corporation, the President of Invision Automotive Systems, Inc., as well as other roles in various Voxx related entities, including Audiovox Advanced Accessories Group LLC and Audiovox Atlanta Corp.  In addition to Mr. Malone, there are other individuals that serve (or have served) as officers or other roles in multiple Voxx related entities, including at least Ms. Loriann Shelton and Mr. Charles M. Stoehr.

6.     Throughout this pleading, and unless specifically noted otherwise, Defendants Voxx, VEC, and Invision will be referenced collectively as the "Defendants" and individually as the "Defendant."  The terms "Defendants" or "Defendant", as well as a reference to a specific Defendant, also includes those employees, agents, and all other persons or entities that the Defendant(s) direct and/or control.

COMPLAINT

3

## THE PATENTS

### U.S. Patent No. 6,871,356

7.     On March 22, 2005, United States Patent No. 6,871,356, entitled "Mobile Video System" (the "'356 patent"), was duly and legally issued by the United States Patent and Trademark Office ("USPTO").  A true and correct copy of the '356 patent is attached as Exhibit "A."

8.     Pursuant to 35 U.S.C. § 282, the '356 patent is presumed valid.

9.     The '356 patent was the subject of an *Inter Partes* Reexamination (Ser. No. 95/000,103), requested on August 1, 2005.  Audiovox Corporation requested the reexamination and was a real party in interest to that reexamination. The USPTO confirmed the patentability of all claims of the '356 patent as originally issued.   A copy of the reexamination certificate is included within Exhibit "A."

10.     Defendants, by virtue of their corporate relationship to one another, are thus estopped from asserting the invalidity of all claims in the '356 patent on any ground which was raised or could have been raised during the *inter partes* reexamination proceedings per 35 U.S.C. § 315(c) (2006).  At a minimum, at least one of the Defendants, Voxx International Corporation, formerly known as Audiovox Corporation, is estopped from asserting the invalidity of all claims in the '356 patent on any ground it raised or could have raised during the *inter partes* reexamination proceedings per 35 U.S.C. § 315(c) (2006).

### U.S. Patent No. 7,267,402

11.     On September 11, 2007, United States Patent No. 7,267,402, entitled "Headrest-Mounted Monitor" (the "'402 patent") was duly and legally issued by the USPTO.  A true and correct copy of the '402 patent is attached as Exhibit "B."

12.     Pursuant to 35 U.S.C. § 282, the '402 patent is presumed valid.

COMPLAINT

**U.S. Patent No. 7,379,125**

13.     On May 27, 2008, United States Patent No. 7,379,125, entitled "Flat Thin Screen TV/Monitor Automotive Roof Mount" (the "'125 patent") was duly and legally issued by the USPTO.  A true and correct copy of the '125 patent is attached as Exhibit "C."

14.     Pursuant to 35 U.S.C. § 282, the '125 patent is presumed valid.

**U.S. Patent No. 7,448,679**

15.     On November 11, 2008, United States Patent No. 7,448,679, entitled "Headrest-Mounted Monitor" (the "'679 patent") was duly and legally issued by the USPTO.  A true and correct copy of the '679 patent is attached as Exhibit "D."

16.     Pursuant to 35 U.S.C. § 282, the '679 patent is presumed valid.

**U.S. Patent No. 7,894,003**

17.     On February 22, 2011, United States Patent No. 7,894,003, entitled "Flat Thin Screen TV/Monitor Automotive Roof Mount" (the "'003 patent") was duly and legally issued by the USPTO.  A true and correct copy of the '003 patent is attached as Exhibit "E."

18.     Pursuant to 35 U.S.C. § 282, the '003 patent is presumed valid.

**The Patents-In-Suit**

19.     The '356 patent, '402 patent, '125 patent, '679 patent, and '003 patent are collectively referred to as "the Patents-in-Suit".

20.     Johnson Safety is the assignee of the Patents-in-Suit and has all rights, title, and interest in and to each of the Patents-in-Suit, including all substantial rights in and to the Patents-in-Suit, and including the right to sue and collect damages for past, present, and future infringement.

21.     Johnson Safety designs, manufactures and sells mobile entertainment systems that include in-vehicle headrest-mounted video systems and overhead

COMPLAINT

5

1  video systems.  The Defendants are direct competitors of Johnson Safety in the

2  area of in-vehicle video systems.

3      22.    Voxx, VEC, and Invision also manufacture and/or sell in-vehicle

4  headrest-mounted video systems and overhead video systems, including those

5  referred to herein as the "Accused Products," which are further described below,

6  under product lines branded as Advent, Audiovox, and Invision.[1]

7      23.    Prior to filing this suit, Johnson Safety complied with the marking

8  requirement pursuant to 35 U.S.C. § 287(a) and is thus entitled to recover past

9  damages for Defendants' infringement of the Patents-in-Suit, as more fully

10  described below.

## JURISDICTION AND VENUE

13      24.    This action arises under the patent laws of the United States, Title 35

14  United States Code, particularly §§ 271, 281, 283, 284 and 285.  This Court has

15  jurisdiction over these claims for patent infringement under Title 28 United States

16  Code §§ 1331 and 1338(a).

17      25.    Upon information and belief, personal jurisdiction exists generally

18  and specifically over each of the Defendants because: each Defendant has

19  sufficient minimum contacts with the forum as a result of business conducted

20  within the State of California and within the Central District of California; each

21  Defendant has purposefully availed itself of the privileges of conducting business

22  in the State of California and in the Central District of California; each Defendant

23  has sought protection and benefit from the laws of the State of California; each

24  Defendant has transacted business in a continuous and systematic manner within

25  the State of California and within the Central District of California, including but

26  not limited to, making, using, selling, offering to sell, and/or leasing products

27  and/or methods, as described and claimed in the Patents-in-Suit either directly, or

28

---

[1] http://investors.voxxintl.com/  ("Corporate Profile").

COMPLAINT

1 through inducing or contributing to the infringing acts of others, including
2 subsidiaries and/or intermediaries; and because Johnson Safety's claims for relief
3 arise directly from the Defendants' business contacts and other activities in the
4 State of California and in the Central District of California.  The Defendants
5 placed the Accused Products into the stream of commerce, and they knew, or
6 should have known, that the Accused Products would be sold and used in the State
7 of California and within this District, such as infringing headrest-mounted video
8 systems sold and used in the State of California and within this District that
9 include the Accused Products.

10    26.    Upon information and belief, the Defendants derive substantial
11 revenue from the sale of the Accused Products through interstate and international
12 commerce.

13    27.    Upon information and belief, the Defendants expect or should
14 reasonably expect their actions to have consequences within this District.

15    28.    The above acts, and those further described herein, have injured, and
16 continue to injure, Johnson Safety within this District.

17    29.    Venue is proper in this Court under Title 28 United States Code §§
18 1391(b)–(d) and 1400(b).  Johnson Safety has been headquartered in this District
19 since 1984 and does business in this District.

### COUNT I:  FIRST CLAIM FOR RELIEF

### (INFRINGEMENT OF U.S. PATENT NO. 6,871,356)

23    30.    The Plaintiff incorporates its previous allegations by the reference.

### Accused Products

26    31.    Voxx and VEC have been and are now making, using, selling,
27 offering for sale within the United States, and/or importing into the United States,
28 at least the following headrest-mounted video systems: HR7011PKG, DD7012,

7

COMPLAINT

DM7012, MM7012, and other headrest-mounted video systems, that infringe claims in the '356 patent (hereinafter collectively referred as the "Accused Headrest Systems-I").

## Direct Infringement

32.    Voxx and VEC have directly infringed and continue to infringe at least claims 1 and 5 of the '356 patent, either literally or under the doctrine of equivalents, by installing the Accused Headrest Systems-I into vehicles during testing, development, production, and/or exhibition.

## Inducement of Infringement

33.    Voxx and VEC have had actual knowledge of the '356 patent at least since the serving of the underlying Complaint in this case.

34.    Upon information and belief, Voxx and VEC, by virtue of its corporate relationship with Voxx, knew of, or were willfully blind towards, the '356 patent, at least since August 1, 2005 when Audiovox Corporation was a real party in interest to the *Inter Partes* Reexamination (Ser. No. 95/000,103) of the '356 patent before the USPTO.

35.    For example, Thomas C. Malone serves (or has served) as the President of Voxx Electronics Corp., the Senior Vice President of Sales of Voxx International Corporation, the President of Audiovox Electronics Corporation, a subsidiary of Voxx International Corporation, the President of Invision Automotive Systems, Inc., as well as other roles in various Voxx related entities, including Audiovox Advanced Accessories Group LLC and Audiovox Atlanta Corp.

36.    In addition to Mr. Malone, there are other individuals that serve (or have served) as officers or in other roles in multiple Voxx related entities, including at least Ms. Loriann Shelton and Mr. Charles M. Stoehr.

COMPLAINT

37.     Upon information and belief, Voxx and VEC, by virtue of its corporate relationship with Voxx, knew, of, or were willfully blind towards, the '356 patent by virtue of the '356 patent being cited by at least 19 of Voxx's patents during the prosecution thereof, and also by virtue of being Johnson Safety's competitors in the area of in-vehicle video systems.

38.     Since becoming aware of, or being willfully blind towards, the '356 patent, Voxx and VEC have continued to intentionally, actively, and knowingly make, use, sell, offer to sell, and/or import one or more of the Accused Headrest Systems-I through their retailers, resellers, distributors, websites (including but not limited to www.voxxintl.com), as well as in other ways.

39.     Since becoming aware of, or being willfully blind towards, the '356 patent, Voxx's and VEC's advertising, sales, and/or installation materials in relation to the Accused Headrest Systems-I have intentionally, actively, knowingly, and willfully contained and continue to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, encourage, prevail on, move by persuasion, cause, and/or influence the public, Voxx's and VEC's distributors, retailers, customers, and/or www.voxxintl.com website users to install the Accused Headrest Systems-I into a vehicle and/or use the Accused Headrest Systems-I in a vehicle, and thereby directly infringe at least claims 1 and 5 of the '356 patent, either literally or under the doctrine of equivalents.

40.     Since becoming aware of, or being willfully blind towards, the '356 patent, Voxx and VEC were willfully blind or knew that the public's, the distributors', the retailers', the customers' and/or the website users' acts relative to installing the Accused Headrest Systems-I into a vehicle and/or using the Accused Headrest Systems-I in a vehicle directly infringe, either literally or under the doctrine of equivalents, at least claims 1 and 5 of the '356 patent.

41.     For these reasons, Voxx and VEC are liable for inducing infringement

COMPLAINT

of the '356 patent, either literally or under the doctrine of equivalents.

## Contributory Infringement

42.    At least for the reasons stated above, Voxx and VEC have had actual knowledge of, or were willfully blind towards, the '356 patent.

43.    Since becoming aware of, or being willfully blind towards, the '356 patent, Voxx and VEC have intentionally, actively, and knowingly sold, or offered to sell the Accused Headrest Systems-I with wireless FM transmitters within the United States or imported the Accused Headrest Systems-I with wireless FM transmitters into the United States.

44.    The Accused Headrest Systems-I are a component of a patented machine, manufacture, and/or combination because the Accused Headrest Systems-I meet at least one element of at least claim 1 of the '356 patent, either literally or under the doctrine of equivalents.

45.    The Accused Headrest Systems-I are a material part of the invention of at least claims 1 and 5 of the '356 patent, either literally or under the doctrine of equivalents, because the majority of the elements of claims 1 and 5 are present in the Accused Headrest Systems-I with wireless FM transmitters, either literally or under the doctrine of equivalents, and for the reasons stated herein, in relation to the lack of substantial non-infringing use.

46.    The Accused Headrest Systems-I with wireless FM transmitters are especially made or especially adapted for use in the infringement of at least claims 1 and 5 of the '356 patent, either literally or under the doctrine of equivalents, because the combination of a vehicle with the Accused Headrest Systems-I with wireless FM transmitters directly infringe the '356 patent, either literally or under the doctrine of equivalents.

47.    Since becoming aware of, or being willfully blind towards, the '356 patent, Voxx and VEC were willfully blind or knew that the Accused Headrest

COMPLAINT

Systems-I with wireless FM transmitters were especially made or especially adapted for use in the infringement of at least claims 1 and 5 of the '356 patent, either literally or under the doctrine of equivalents.

48.    The Accused Headrest Systems-I with wireless FM transmitters are not a staple article or commodity of commerce suitable for substantial non-infringing use because the only substantial use of the Accused Headrest Systems-I with wireless FM transmitters is to be installed in a vehicle and function as an in-vehicle headrest video system, which directly infringes at least claims 1 and 5 of the '356 patent, either literally or under the doctrine of equivalents.

49.    Since becoming aware of, or being willfully blind towards, the '356 patent, Voxx and VEC were willfully blind or knew that the Accused Headrest Systems-I with wireless FM transmitters were not a staple article or commodity of commerce suitable for substantial noninfringing use.

50.    By selling, offering to sell, and/or importing into the United States one or more of the Accused Headrest Systems-I with wireless FM transmitters and/or the components thereof, Voxx and VEC have contributed to the infringement by the public, the distributors, the retailers, the customers, and the website users who import, make, use, sell, offer to sell, lease, and/or offer to lease a vehicle installed with an Accused Headrest System-I with wireless FM transmitters, and thus directly infringe at least claims 1 and 5 of the '356 patent, either literally or under the doctrine of equivalents.

51.    For these reasons, Voxx and VEC are contributory infringers of at least claims 1 and 5 of the '356 patent, either literally or under the doctrine of equivalents.

COMPLAINT

## COUNT II:  SECOND CLAIM FOR RELIEF

## (INFRINGEMENT OF U.S. PATENT NO. 7,267,402)

52.     The Plaintiff incorporates its previous allegations by the reference.

### Accused Products

53.     Voxx and VEC have been and are now making, using, selling, offering for sale within the United States, and/or importing into the United States, at least the following headrest-mounted video systems: HR7011PKG, DD7012, DM7012, MM7012, and other headrest-mounted video systems, that infringe the '402 patent (hereinafter collectively referred as the "Accused Headrest Systems-II").

### Direct Infringement

54.     Voxx and VEC have directly infringed and continue to infringe at least claim 10 of the '402 patent, either literally or under the doctrine of equivalents, by replacing existing headrest-mounted video systems with the Accused Headrest Systems-II during testing, development, and/or production.

### Inducement of Infringement

55.     Voxx and VEC have had actual knowledge of the '402 patent at least since the serving of the underlying Complaint in this case.

56.     Upon information and belief, Voxx and VEC, by virtue of their corporate relationship, knew of, or were willfully blind towards, the '402 patent at least since May 31, 2011, when Audiovox submitted an Information Disclosure Statement during the prosecution of U.S. utility patent application Ser. No. 11/272,002, identifying the '402 patent as one of the prior art references.

57.     Since becoming aware of, or being willfully blind towards, the '402 patent, Voxx and VEC have continued to intentionally, actively, and knowingly

COMPLAINT

make, use, sell, offer to sell, and/or import one or more of the Accused Headrest Systems-II through their retailers, resellers, distributors, websites (including but not limited to www.voxxintl.com), as well as in other ways.

58.     Since becoming aware of, or being willfully blind towards, the '402 patent, Voxx's and VEC's advertising, sales, and/or installation materials in relation to the Accused Headrest Systems-II have intentionally, actively, knowingly, and willfully contained and continues to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, encourage, prevail on, move by persuasion, cause, and/or influence the public, Voxx's and VEC's distributors, retailers, customers, and/or www.voxxintl.com website users to, at least, replace existing headrest-mounted video systems with the Accused Headrest Systems-II, and thereby directly infringe at least Claim 10 of the '402 patent, either literally or under the doctrine of equivalents.

59.     Since becoming aware of, or being willfully blind towards, the '402 patent, Voxx and VEC were willfully blind or knew that the public's, the distributors', the retailers', the customers' and/or the website users' acts relative to replacing the existing headrest-mounted video systems with the Accused Headrest Systems-II, directly infringe, either literally or under the doctrine of equivalents, at least claim 10 of the '402 patent.

60.     For these reasons, Voxx and VEC are liable for inducing infringement of the '402 patent, either literally or under the doctrine of equivalents.

## COUNT III:  THIRD CLAIM FOR RELIEF

## (INFRINGEMENT OF U.S. PATENT NO. 7,379,125)

61.     The Plaintiff incorporates its previous allegations by the reference.

COMPLAINT

**Accused Products**

62.     At least Invision has been and is now making, using, selling, offering for sale within the United States, and/or importing into the United States, at least the following overhead video system: Invision G10.  At least Voxx and VEC have been and are now making, using, selling, offering for sale within the United States, and/or importing into the United States, at least the following overhead video systems: Advent ADVDLX10.   Both the Invision G10 and the Advent ADVDLX10, as well as the other of Defendants' in-vehicle roof-mounted video systems, that infringe the '125 patent, will be collectively referred as the "Accused Overhead Systems-I" hereinafter.

**Direct Infringement**

63.     By so making, using, selling, or offering to sell within the United States, and/or importing into the United States at least the aforementioned Accused Overhead Systems-I, one or more of the Defendants have directly infringed and continue to infringe at least claim 1 of the '125 patent, either literally or under the doctrine of equivalents.

64.     To the extent that the other Defendants direct and/or control the acts of Invision, those Defendants are liable for Invision's acts.  Upon information and belief, at least Thomas C. Malone, President of Audiovox Electronics Corp., directed and controlled the actions of Invision after its purchase.   Upon information and belief, Mr. Malone is also the Senior Vice President of Sales at Voxx International Corporation and has been since 2006.

**Inducement of Infringement**

65.     The Defendants have had actual knowledge of the '125 patent at least since the serving of the underlying Complaint in this case.

COMPLAINT

14

66.     Upon information and belief, each of the Defendants, by virtue of their corporate relationship, knew of, or were willfully blind towards, the '125 patent at least since December 1, 2009, when Audiovox submitted an Information Disclosure Statement during the prosecution of U.S. utility patent application Ser. No. 11/649,121, identifying the '125 patent as one of the prior art references.

67.     Upon information and belief, each of the Defendants, by virtue of their corporate relationship, knew of, or was willfully blind towards, the '125 patent at least since October 10, 2009, when the '125 patent was cited by the examiner during the prosecution of Audiovox' U.S. utility patent application Ser. No. 11/593,380 as one of the prior art references.

68.     Upon information and belief, each of the Defendants, by virtue of their corporate relationship, knew of, or was willfully blind towards, the '125 patent at least since February 22, 2012, when the '125 patent was cited by the examiner during the prosecution of Voxx' U.S. utility patent application Ser. No. 11/691,168 as one of the prior art references.

69.     Upon information and belief, Invision is a competitor of Johnson Safety and is thus aware of the '125 patent.

70.     Invision assigned U.S. Pat. No. 6,339,455 to Johnson Safety and at least since that time has, upon information and belief, had actual knowledge, or been willfully blind towards, patents assigned to Johnson Safety.

71.     Since becoming aware of, or being willfully blind towards, the '125 patent, the Defendants have continued to intentionally, actively, and knowingly make, use, sell, offer to sell, and/or import one or more of the Accused Overhead Systems-I through their retailers, resellers, distributors, websites (including but not limited to www.voxxintlcorp.com and www.invisionautomotive.com), as well as in other ways.

72.     Since becoming aware of, or being willfully blind towards, the '125 patent, the Defendants' advertising, sales, and/or installation in relation to the

COMPLAINT

Accused Overhead Systems-I have intentionally, actively, knowingly, and willfully contained and continues to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, encourage, prevail on, move by persuasion, cause, and/or influence the public, the Defendants' distributors, retailers, customers, and/or www.voxxintlcorp.com and www.invisionautomotive.com website users to, at least, make, use, sell, offer to sell, or import one or more of the Accused Overhead Systems-I to practice the inventions claimed in the '125 patent, and thus directly infringe at least claim 1 of the '125 patent, either literally or under the doctrine of equivalents.

73.     Since becoming aware of, or being willfully blind towards, the '125 patent, the Defendants were willfully blind or knew that the public's, the distributors', the retailers', the customers' and/or the website users' acts relative to making, using, selling, offering to sell, importing, leasing, and/or offering to lease one or more of the Accused Overhead Systems-I to practice the inventions claimed in the '125 patent, directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '125 patent.

74.     For these reasons, the Defendants are liable for inducing infringement of at least claim 1 of the '125 patent, either literally or under the doctrine of equivalents.

**Contributory Infringement**

75.     At least for the reasons stated above, the Defendants have had actual knowledge of, or were willfully blind towards, the '125 patent.

76.     Since becoming aware of, or being willfully blind towards, the '125 patent, the Defendants have intentionally, actively, and knowingly sold, offered to sell the Accused Overhead Systems-I within the United States, or imported the Accused Overhead Systems-I into the United States.

COMPLAINT

77.   The Accused Overhead Systems-I are a component of a patented machine, manufacture, and/or combination because the Accused Overhead Systems-I meet at least one element of at least claim 1 of the '125 patent, either literally or under the doctrine of equivalents.

78.   The Accused Overhead Systems-I are a material part of the invention of at least claim 1 of the '125 patent, either literally or under the doctrine of equivalents, because the majority of the elements of claim 1 are present in the Accused Overhead Systems-I, either literally or under the doctrine of equivalents, and for the reasons stated herein, in relation to the lack of substantial non-infringing use.

79.   The Accused Overhead Systems-I are especially made or especially adapted for use in an infringement, at least because the act of using in any manner, making, selling, offering to sell, or importing one or more of the Accused Overhead Systems-I when not mounted to an interior surface of a roof of a vehicle, as well as the act of mounting one or more of the Accused Overhead Systems-I to an interior surface of a roof of a vehicle, are both a direct infringement of at least claim 1 of the '125 patent, either literally or under the doctrine of equivalents.

80.   Since becoming aware of, or being willfully blind towards, the '125 patent, the Defendants were willfully blind or knew that the Accused Overhead Systems-I were especially made or especially adapted for use in an infringement.

81.   The Accused Overhead Systems-I are not a staple article or commodity of commerce suitable for substantial noninfringing use because the Accused Overhead Systems-I themselves meet every element of at least claim 1 of '125 patent, either literally or under the doctrine of equivalents, and thus cannot be used, sold, offered for sale, or imported without infringing at least claim 1 of the '125 patent, either literally or under the doctrine of equivalents.  Alternatively, to the extent that the Accused Overhead Systems-I themselves are found not to meet every element (e.g., an interior surface of a roof of a vehicle) found to be part of at

17

COMPLAINT

least claim 1 of '125 patent, either literally or under the doctrine of equivalents, the Accused Overhead Systems-I meet the vast majority of the elements of at least claim 1 of the '125 patent, either literally or under the doctrine of equivalents, and have no other substantial use than to be used in combination with the remaining element(s) of at least claim 1 of the '125 patent, either literally or under the doctrine of equivalents.

82.     Since becoming aware of, or being willfully blind towards, the '125 patent, one or more of the Defendants were willfully blind or knew that the Accused Overhead Systems-I were not a staple article or commodity of commerce suitable for substantial noninfringing use.

83.     By selling, offering to sell, and/or importing into the United States one or more of the Accused Overhead Systems-I and/or the components thereof, the Defendants have contributed to the infringement by the public, the distributors, the retailers, the customers and the website users who mount one or more of the Accused Overhead Systems-I to an interior surface of a roof of a vehicle, or otherwise import, make, use, sell, offer to sell, lease, and/or offer to lease one or more of the Accused Overhead Systems-I, and thus directly infringe at least claim 1 of the '125 patent, either literally or under the doctrine of equivalents.

84.     For these reasons, the Defendants are contributory infringers of at least claim 1 of the '125 patent, either literally or under the doctrine of equivalents.

## COUNT IV:  FOURTH CLAIM FOR RELIEF

## (INFRINGEMENT OF U.S. PATENT NO. 7,448,679)

85.     The Plaintiff incorporates its previous allegations by the reference.

## Accused Products

86.     Voxx and VEC have been and are now making, using, selling, offering for sale within the United States, and/or importing into the United States,

COMPLAINT

at least the following headrest-mounted monitor sets: HR7011M, HR7012S, HR7012M, and other in-vehicle headrest-mounted monitor sets, that infringe the '679 patent (hereinafter collectively referred as the "Accused Headrest Monitors-I").

## Direct Infringement

87.     By so making, using, selling, or offering to sell within the United States, and/or importing into the United States at least the aforementioned Accused Headrest Monitors-I, Voxx and VEC have directly infringed and continue to infringe at least claim 1 of the '679 patent, either literally or under the doctrine of equivalents.

## Inducement of Infringement

88.     Voxx and VEC have had actual knowledge of the '679 patent at least since the serving of the underlying Complaint in this case.

89.     Upon information and belief, Voxx and VEC, by virtue of its corporate relationship with Voxx, knew of, or were willfully blind towards, the '679 patent at least since August 24, 2008, when the '679 patent was cited and specifically mentioned by the examiner during the prosecution of Audiovox's U.S. utility patent application Ser. No. 11/272,002 as one of the prior art references.

90.     Upon information and belief, Voxx and VEC, by virtue its corporate relationship with Voxx, knew of, or were willfully blind towards, the '679 patent at least since June 10, 2011, when the '679 patent was cited by the examiner during the prosecution of Audiovox's U.S. utility patent application Ser. No. 12/216,852 as one of the prior art references.

91.     Since becoming aware of, or being willfully blind towards, the '679 patent, Voxx and VEC have continued to intentionally, actively, and knowingly make, use, sell, offer to sell, and/or import one or more of the Accused Headrest

COMPLAINT

Monitors-I through their retailers, resellers, distributors, websites (including but not limited to www.voxxintl.com), as well as in other ways.

92.    Since becoming aware of, or being willfully blind towards, the '679 patent, Voxx's and VEC's advertising, sales, and/or installation materials in relation to the Accused Headrest Monitors-I have intentionally, actively, knowingly, and willfully contained and continues to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, encourage, prevail on, move by persuasion, cause, and/or influence the public, Voxx's and VEC's distributors, retailers, customers, and/or www.voxxintl.com website users to, at least, make, use, sell, offer to sell, import, lease and/or offer to lease one or more of the Accused Headrest Monitors-I to practice the inventions claimed in the '679 patent, and thus directly infringe at least claim 1 of the '679 patent, either literally or under the doctrine of equivalents.

93.    Since becoming aware of, or being willfully blind towards, the '679 patent, Voxx and VEC were willfully blind or knew that the public's, the distributors', the retailers', the customers' and/or the website users' acts relative to making, using, selling, offering to sell, importing, leasing, and/or offering to lease one or more of the Accused Headrest Monitors-I to practice the inventions claimed in the '679 patent, directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '679 patent.

94.    For these reasons, Voxx and VEC are liable for inducing infringement of the '679 patent, either literally or under the doctrine of equivalents.

## **Contributory Infringement**

95.    At least for the reasons stated above, Voxx and VEC have had actual knowledge of, or were willfully blind towards, the '679 patent.

COMPLAINT

96.   Since becoming aware of, or being willfully blind towards, the '679 patent, Voxx and VEC have intentionally, actively, and knowingly sold, offered to sell the Accused Headrest Monitors-I within the United States, or imported the Accused Headrest Monitors-I into the United States.

97.   The Accused Headrest Monitors-I are a component of a patented machine, manufacture, and/or combination because the Accused Headrest Monitors-I meet at least one element of at least claim 1 of the '679 patent, either literally or under the doctrine of equivalents.

98.   The Accused Headrest Monitors-I are a material part of the invention of at least claim 1 of the '679 patent, either literally or under the doctrine of equivalents, because the vast majority of the elements of claim 1, if not all, are present in the Accused Headrest Systems-I, either literally or under the doctrine of equivalents, and for the reasons stated herein, in relation to the lack of substantial non-infringing use.

99.   The Accused Headrest Monitors-I were especially made or especially adapted for use in an infringement of at least claim 1 of the '679 patent, either literally or under the doctrine of equivalents because the vast majority of the elements of claim 1, if not all, are present in the Accused Headrest Monitors-I, either literally or under the doctrine of equivalents, and for the reasons stated herein, in relation to the lack of substantial non-infringing use.

100.  Since becoming aware of, or being willfully blind towards, the '679 patent, Voxx and VEC were willfully blind or knew that the Accused Headrest Monitors-I were especially made or especially adapted for use in an infringement of at least claim 1 of the '679 patent, either literally or under the doctrine of equivalents.

101.  The Accused Headrest Monitors-I are not a staple article or commodity of commerce suitable for substantial noninfringing use because their only substantial use is to be installed in a vehicle and function as an in-vehicle

COMPLAINT

headrest video system, which directly infringes at least claim 1 of the '679 patent, either literally or under the doctrine of equivalents, and for the reasons stated above with respect to being especially made or especially adapted for use in an infringement.

102.   Since becoming aware of, or being willfully blind towards, the '679 patent, Voxx and VEC were willfully blind or knew that the Accused Headrest Monitors-I were not a staple article or commodity of commerce suitable for substantial noninfringing use.

103.   By selling, offering to sell, and/or importing into the United States one or more of the Accused Headrest Monitors-I and/or the components thereof, Voxx and VEC have contributed to the infringement by the public, the distributors, the retailers, the customers and the website users who import, make, use, sell, offer to sell, lease, and/or offer to lease one or more of the Accused Headrest Monitors-I to practice the inventions claimed in the '679 patent, and thus directly infringe at least claim 1 of the '679 patent, either literally or under the doctrine of equivalents.

104.   For these reasons, Voxx and VEC are contributory infringers of at least claim 1 of the '679 patent, either literally or under the doctrine of equivalents.

## COUNT V:  FIFTH CLAIM FOR RELIEF

### (INFRINGEMENT OF U.S. PATENT NO. 7,894,003)

105.   The Plaintiff incorporates its previous allegations by the reference.

### Accused Products

106.   At least Invision has been and is now making, using, selling, offering for sale within the United States, and/or importing into the United States, at least the following overhead video systems: Invision G10, and other in-vehicle roof-mounted video systems, as more fully described and claimed in the '003 patent (hereinafter collectively referred as the "Accused Overhead Systems-II").

COMPLAINT

**Direct Infringement**

107.   By so making, using, selling, or offering to sell within the United States, and/or importing into the United States at least the aforementioned Accused Overhead Systems-II, at least Invision has directly infringed, and continues to infringe, at least claim 1 of the '003 patent, either literally or under the doctrine of equivalents.

108.   To the extent that the other Defendants direct and/or control the acts of Invision, those Defendants are liable for Invision's acts.  Upon information and belief, at least Thomas C. Malone, President of Audiovox Electronics Corp. directed and controlled the actions of Invision after its purchase.   Upon information and belief, Mr. Malone is also the Senior Vice President of Sales at Voxx International Corporation and has been since 2006.

**Inducement of Infringement**

109.   Invision had actual knowledge of the '003 patent at least since the serving of the underlying Complaint in this case.

110.   Upon information and belief, Invision is a competitor of Johnson Safety and is thus aware of the '003 patent.

111.   Invision assigned U.S. Pat. No. 6,339,455 to Johnson Safety and at least since that time has, upon information and belief, had actual knowledge, or been willfully blind towards, patents assigned to Johnson Safety.

112.   Upon information and belief, Invision, by virtue of its corporate relationship with Voxx, knew or should have known of, or were willfully blind towards, the '003 patent at least since February 22, 2012, when the '125 patent, which is in the same patent family and has an almost identical specification to the '003 patent, was cited by the examiner during the prosecution of Voxx's U.S. utility patent application Ser. No. 11/691,168 as one of the prior art references.

113.   Since becoming aware of, or being willfully blind towards, the '003

COMPLAINT

patent, Invision has continued to intentionally, actively, and knowingly make, use, sell, offer to sell, and/or import one or more of the Accused Overhead Systems-II through its retailers, resellers, distributors, websites (including but not limited to www.invisionautomotive.com), as well as in other ways.

114.   Since becoming aware of, or being willfully blind towards, the '003 patent, Invision's manuals, advertising, and sales materials in relation to the Accused Overhead Systems-II have intentionally, actively, knowingly, and willfully contained and continues to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, encourage, prevail on, move by persuasion, cause, and/or influence the public, Invision's distributors, retailers, customers, and/or www.invisionautomotive.com website users to, at least, make, use, sell, offer to sell, or import one or more of the Accused Overhead Systems-II to practice the inventions claimed in the '003 patent, and thus directly infringe at least claim 1 of the '003 patent, either literally or under the doctrine of equivalents.

115.   Since becoming aware of, or being willfully blind towards, the '003 patent, Invision was willfully blind or knew that the public's, the distributors', the retailers', the customers' and/or the website users' acts relative to making, using, selling, offering to sell, importing, leasing, and/or offering to lease one or more of the Accused Overhead Systems-II to practice the inventions claimed in the '003 patent, directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '003 patent.

116.   For these reasons, Invision is liable for inducing infringement of at least claim 1 of the '003 patent, either literally or under the doctrine of equivalents.

## **Contributory Infringement**

117.   At least for the reasons stated above, Invision has had actual knowledge of, or were willfully blind towards, the '003 patent.

COMPLAINT

118.   Since becoming aware of, or being willfully blind towards, the '003 patent, Invision has intentionally, actively, and knowingly sold, offered to sell the Accused Overhead Systems-II within the United States, or imported the Accused Overhead Systems-II into the United States.

119.   The Accused Overhead Systems-II are a component of a patented machine, manufacture, and/or combination because the Accused Overhead Systems-II meet at least one element of at least claim 1 of the '003 patent, either literally or under the doctrine of equivalents.

120.   The Accused Overhead Systems-II are especially made or especially adapted for use in an infringement, at least because the act of using in any manner, making, selling, offering to sell, or importing one or more of the Accused Overhead Systems-II when not mounted to an interior surface of a roof of a vehicle, as well as the act of mounting one or more of the Accused Overhead Systems-II to an interior surface of a roof of a vehicle, are a direct infringement of at least claim 1 of the '003 patent, either literally or under the doctrine of equivalents, and for the reasons stated herein, in relation to the lack of substantial non-infringing use.

121.   Since becoming aware of, or being willfully blind towards, the '003 patent, Invision was willfully blind or knew that the Accused Overhead Systems-II were especially made or especially adapted for use in an infringement.

122.   The Accused Overhead Systems-II are not a staple article or commodity of commerce suitable for substantial noninfringing use because the Accused Overhead Systems-II themselves meet every element of at least claim 1 of '003 patent, either literally or under the doctrine of equivalents, and thus cannot be used, sold, offered for sale, or imported without infringing at least claim 1 of the '003 patent, either literally or under the doctrine of equivalents.  Alternatively, to the extent that the Accused Overhead Systems-II themselves are found not to meet every element (e.g., an interior surface of a roof of a vehicle) found to be part

COMPLAINT

of at least claim 1 of '003 patent, either literally or under the doctrine of equivalents, the Accused Overhead Systems-II meet the vast majority of the elements of at least claim 1 of the '003 patent, either literally or under the doctrine of equivalents, and have no other substantial use than to be used in combination with the remaining element(s) of at least claim 1 of '003 patent, either literally or under the doctrine of equivalents.

123.   Since becoming aware of, or being willfully blind towards, the '003 patent, Invision was willfully blind or knew that the Accused Overhead Systems-II were not a staple article or commodity of commerce suitable for substantial noninfringing use.

124.   By selling, offering to sell, and/or importing into the United States one or more of the Accused Overhead Systems-II and/or the components thereof, Invision has contributed to the infringement by the public, the distributors, the retailers, the customers and the website users who mount one or more of the Accused Overhead Systems-II to an interior surface of a roof of a vehicle, or otherwise import, make, use, sell, offer to sell, lease, and/or offer to lease one or more of the Accused Overhead Systems-II, and thus directly infringe at least claim 1 of the '003 patent, either literally or under the doctrine of equivalents.

125.   For these reasons, Invision is a contributory infringer of at least claim 1 of the '003 patent, either literally or under the doctrine of equivalents.

## DAMAGES

126.   Johnson Safety has sustained the loss of sales with regard to its in-vehicle headrest video systems/monitors and/or overhead video systems/monitors as a direct and proximate result of the Defendants' infringement of the Patents-in-Suit.   The Defendants have diverted the sales from Johnson Safety with their infringing products and there are no acceptable noninfringing substitutes.

127.   The Defendants' acts of infringement of the Patents-in-Suit as alleged

COMPLAINT

above have injured Johnson Safety and thus Johnson Safety is entitled to recover damages adequate to compensate it for its lost profits from that infringement, including its costs, and pre-judgment and post-judgment interest per 35 U.S.C. § 284.

128.   Alternatively, because of the Defendants' acts of infringement of the Patents-in-Suit, Johnson Safety is entitled to recover damages which in no event can be less than a reasonable royalty, including its costs, and pre-judgment and post-judgment interest pursuant to 35 U.S.C. § 284.

## PERMANENT INJUNCTION

129.   Johnson Safety is suffering and will suffer irreparable harm from the Defendants' infringement of the Patents-in-Suit.

130.   Johnson Safety has no adequate remedy at law and unless enjoined, the Defendants will continue their infringing conduct.

131.   The harm to Johnson Safety from denying an injunction would outweigh the harm to Defendants from granting one, and an injunction, in fact, will serve the public interest.

132.   The Court should therefore enjoin the Defendants' continuing infringement of the Patents-in-Suit pursuant to 35 U.S.C. § 283, the principles of equity, and/or other applicable authority.

## WILLFUL INFRINGEMENT

133.   Voxx and VEC have infringed and continued to infringe the Patents-in-Suit despite an objectively high likelihood that their actions constituted infringement of these valid patents.

134.   Voxx and VEC knew or should have known this objectively high likelihood, at least because the '356 patent has been the subject of a patent reexamination proceeding with Voxx being the real party in interest, and the '402

COMPLAINT

1  patent, the '125 patent, the '679 patent, and the '003 patent have been brought to
2  their attention by the USPTO during the prosecution of Voxx's and VEC's patents,
3  as alleged hereinabove.

4      135.  Invision has infringed and continues to infringe the '125 patent and
5  the '003 patent despite an objectively high likelihood that its actions constitute
6  infringement of these valid patents.

7      136.  Upon information and belief, by virtue of its corporate relationship
8  with Voxx, Invision knew or should have known of this objectively high
9  likelihood, at least because the '125 patent and the '003 patent have been brought
10 to its attention during the prosecution of Voxx's and VEC's patents and by virtue
11 of Invision being a fully owned subsidiary of Voxx, as alleged hereinabove.

12     137.  The infringement of the Patents-in-Suit alleged above has injured
13 Johnson Safety and thus, Johnson Safety is entitled to recover damages adequate to
14 compensate for the Defendants' infringement, which in no event can be less than a
15 reasonable royalty.

16     138.  Because the Defendants willfully infringed the Patents-in-Suit, the
17 Plaintiff is permitted under 35 U.S.C. § 284 to recover treble the amount of actual
18 damages sustained by the Plaintiff.

19
20                          **EXCEPTIONAL CASE**

21     139.  The Defendants' acts, including at least their willful infringement,
22 have made the present case exceptional pursuant to 35 U.S.C. § 285 and/or other
23 applicable authority.  Therefore, the prevailing party shall be entitled to attorneys'
24 fees.

25                        **DEMAND FOR JURY TRIAL**

26     140.  Johnson Safety hereby demands a jury trial on all claims and issues
27 triable of right by a jury, including the Defendants' affirmative defenses and
28 counterclaims, if any.

COMPLAINT

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Johnson Safety prays for entry of judgment in its favor and against Defendants Voxx International Corporation, Voxx Electronics Corporation, and Invision Automotive Systems Inc.:

        A. Finding Voxx International Corporation and Voxx Electronics Corporation have infringed one or more claims of the '356 patent, the '402 patent, the '125 patent, the '679 patent, and the '003 patent;

        B. Finding Invision Automotive Systems Inc., has infringed one or more claims of the '125 patent and the '003 patent;

        C. Awarding Johnson Safety all allowable damages, including lost profits, flowing from the infringement of the '356 patent, the '402 patent, the '125 patent, the '679 patent, and the '003 patent, which can be no less than a reasonable royalty under 35 U.S.C. § 284;

        D. Finding Voxx International Corporation and Voxx Electronics Corporation have willfully infringed the '356 patent, the '402 patent, the '125 patent, the '679 patent, and the '003 patent, and awarding Johnson Safety all allowable damages for their willful infringement, including but not limited to an award of three times Johnson Safety's actual damages pursuant to 35 U.S.C. § 284;

        E. Finding Invision Automotive Systems Inc. has willfully infringed the '125 patent and the '003 patent, and awarding Johnson Safety all allowable damages for their willful infringement, including but not limited to an award of three times Johnson Safety's damages pursuant to 35 U.S.C. § 284;

COMPLAINT

F. Permanently enjoining the Defendants and their directors, officers, agents, servants, employees, affiliates, and all others in privy or in concert with them, and their parents, subsidiaries, divisions, successors and assigns, from directly or indirectly infringing the '356 patent, the '402 patent, the '125 patent, the '679 patent, and the '003 patent, pursuant to 35 U.S.C. § 283, principles of equity, and/or other applicable authority;

G. Awarding Johnson Safety its costs, and pre-judgment and post-judgment interest on its damages caused by the Defendants' infringement of the '356 patent, the '402 patent, the '125 patent, the '679 patent, and the '003 patent and/or otherwise, as the Court may deem just;

H. Declaring this case exceptional, in Johnson Safety's favor, and awarding Johnson Safety its attorneys' fees in this action pursuant to 35 U.S.C. § 285 and/or other applicable authority; and

I. Granting Johnson Safety such other and further relief that is just and proper under the circumstances.

Dated this 19th day of December, 2014.

Respectfully submitted,

FULWIDER • PATTON LLP

/Vern D. Schooley
Vern D. Schooley
James Juo
ATTORNEYS FOR PLAINTIFF,
JOHNSON SAFETY, INC.

793815.1

COMPLAINT

30