O

United States District Court

Central District of California

| | |
|---|---|
| JOHNSON SAFETY, INC., | Case № 5:14-cv-02591-ODW(DTB) |
| Plaintiff, | **CLAIM CONSTRUCTION ORDER** |
| v. | **U.S. PATENT NO. 6,871,356** |
| VOXX INTERNATIONAL CORPORATOIN; VOXX ELECTRONICS CORPORATION; and INVISION AUTOMOTIVE SYSTEMS INC., | **U.S. PATENT NO. 7,267,402** |
| | **U.S. PATENT NO. 7,448,679** |
| | **U.S. PATENT NO. 7,379,125** |
| Defendants. | **U.S. PATENT NO. 5,775,762** |
| | **U.S. PATENT NO. 7,050,124** |
| | **U.S. PATENT NO. 7,245,274** |
| | **U.S. PATENT NO. 6,678,892** |
| | **U.S. PATENT NO. 7,839,355** |

## I.    INTRODUCTION

This case involves several patents, owned and/or licensed by either Plaintiff Johnson Safety, Inc. ("Johnson") or Defendants Voxx International Corporation, Voxx Electronics Corporation, and Invision Automotive Systems, Inc. (collectively, "Voxx").  (Compl. ¶¶ 7—23, ECF No. 1; Countercompl. ¶¶ 17—36, ECF No. 42.)

Both Johnson and Voxx are in the consumer vehicle electronics market.  (*See* Compl. ¶¶ 1, 17—23; Countercompl. ¶¶ 1, 17—36.)  The patents at issue cover video systems for vehicles, which are embedded in the front seat headrests or hang from the ceiling.  (*See id.*)  The parties dispute fifteen terms (five within Johnson's patents, and ten within Voxx's patents) that they have agreed are "significant," and they list an additional eight "less significant" disputed terms.  (Joint Claim Chart ("JCC"), ECF No. 74).  For purposes of claim construction, and in accord with this Court's Patent Standing Order (ECF No. 54), the Court will construct only the terms labeled "significant" in the JCC.

All of the patents at issue cover vehicle electronics, specifically video systems and monitors affixed to a car ceiling or headrest.  (*See* Compl. ¶¶ 7—23; Countercompl. ¶¶ 17—36.)  The types of electronics products that the patents cover can be broken down into three categories: Headrest Patents, Overhead Patents, and Portable/Non-Specified System Patents.

- The Headrest Patents include: Johnson's Patent Nos. 6,871,356 ("the '356 patent"), 7,267,402 ("the '402 patent"), and 7,448,679 ("the '679 patent"), and Voxx's Patent Nos. 7,245,274 ("the '274 patent") and 7,839,355 ("the '355 patent");
- The Overhead Patents include: Johnson's Patent No. 7,379,125 ("the '125 patent") and Voxx's Patent No. 5,775,762 ("the '762 patent"); and
- The Portable/Non-Specified System Patents include: Voxx's Patent Nos. 7,050,124 ("the '124 patent") and 6,678,892 ("the '892 patent").

In the interest of brevity, and due to the number of claims to be constructed, each patent's background is detailed within the analysis section below.

In short, both parties (Defendants, collectively, and Johnson) allege that the

other is selling products that infringe on its patents. (*See* Compl. ¶¶ 30—125; Countercompl. ¶¶ 38—196.) On October 28, 2016, the Court held a claim construction hearing on the disputed terms that the parties have deemed significant. For the reasons discussed below, the Court adopts the described constructions outlined herein.

## II.   LEGAL STANDARD

Claim construction is an interpretive issue "exclusively within the province of the court," and it begins with an analysis of the claim language itself. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

### A.   Claim Construction Generally

Claims are to be interpreted from the perspective of a person of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). That "person of ordinary skill" is deemed to read the claim term in two contexts: the context of the claim in which the term appears and the context of the entire patent. *Id.* Accordingly, claims must be read in light of the specification, which is "always highly relevant to the claim construction analysis." *Id.* at 1315 (internal quotations omitted).

However, the general rule is that limitations from the specification must not be imported into the claims. *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186-87 (Fed. Cir. 1998). "[T]he line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Phillips*, 415 F.3d at 1323.

The "ordinary and customary meaning" of the words of a disputed claim is at the heart of claim construction. *Phillips*, 415 F.3d at 1312-13 (internal quotations and citations omitted). But in two situations, the "ordinary and customary" meaning of the terms is superseded: 1) when a patentee sets out a definition and acts as its own lexicographer; or 2) when the patentee disavows the full scope of a claim term either

1  in the specification or during prosecution.  *Thorner v. Sony Computer Entm't Am.*
2  *LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

3       "To act as its own lexicographer, a patentee must 'clearly set forth a definition
4  of the disputed claim term' other than its plain and ordinary meaning." *Id.*  Disavowal
5  occurs "[w]here the specification makes clear that the invention does not include a
6  particular feature." *Id.* at 1366.  "[T]hat feature is [then] deemed to be outside the
7  reach of the claims of the patent, even though the language of the claims, read without
8  reference to the specification, might be considered broad enough to encompass the
9  feature in question." *Id.*

10 **B.     Special Rules Regarding 35 U.S.C. § 122¶6**

11      Means-plus-function claims are a particular class of claims, and they are
12 governed by 35 U.S.C. § 112¶6.  Section 112¶6 provides that the scope of a claim
13 expressing a means or step for accomplishing something covers the structure,
14 material, or acts (and equivalents thereof) in the claim language that correspond with
15 the means in the patent's specification.  If § 112¶6 does apply, then the claim is
16 limited to the embodiments in the specification and equivalents thereof.  *See Philips*,
17 415 F.3d at 1303.

18      The first step in the analysis is to determine whether § 112¶6 actually applies to
19 the claim at issue; it applies only to claims that describe a function without defining
20 the structure with which to carry out the function.  *DePuy Spine, Inc. v. Medtronic*
21 *Sofamor Danek, Inc.*, 469 F.3d 1005, 1023 (Fed. Cir. 2006).  If the word "means"
22 appears in a claim element in association with a function, a rebuttable presumption
23 arises that §112¶6 applies.  *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1368
24 (Fed. Cir. 2005).  If the claim term lacks the word "means," the term will be construed
25 under § 112¶6 only if the "challenger demonstrates that the claim fails to recite
26 sufficiently definite structure or else recites function without reciting sufficient
27 structure for performing that function." *Williamson v. Citrix Online LLC*, 792 F.3d
28 1339, 1349 (Fed. Cir. 2015).  In other words, if the claim does not include the word

"means," then the challenger wishing to construe under § 112¶6 must show that the structure described in the claim is too indefinite.  *See id.*  The overall inquiry is whether the claim term, in the context of the broader claim language, suggests a class of *specific* structures.  *Id.*  If it does, then the term should *not* be construed under § 112¶6.  *Id.*

The second step, once it is determined that § 112¶6 applies, is interpretation.  *See JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005).  The first facet of interpretation is that the court must identify the function of the claim term.  *Id.*  After identifying the claimed function, the court must then identify the corresponding structure by looking at the specification.  *Callicrate*, 427 F.3d at 1369.  All structures in the specification corresponding to the claimed function are relevant; it is an error to limit the structure to just the preferred embodiment.  *Id.*  If the specification does not provide corresponding structure for the claimed function, then the claim is invalid as indefinite.  *Williamson*, 792 F.3d at 1352.

In addition to the structures, materials, or acts of the embodiments described in the patent's specification, the patentee is also entitled to "equivalents thereof" as of the time the patent was issued.  *See Palumbo v. Don-Joy Co.*, 762 F.2d 969 (Fed. Cir. 1985).  However, the "equivalents" issue arises in the context of the infringement determination; thus, whether something constitutes an equivalent is a question of fact for the jury.  *Id.*

## III.    DISCUSSION

Below, the Court constructs each of the "significant" terms in the order they appear in the JCC.

### A.    The '356 Patent

The '356 Patent discloses headrest mounted video systems with two major components: a housing and a display that folds into and out of the housing.  (*See generally* the '356 Patent, Pl. Opening Br., Ex. A, ECF No. 73).  The folding function of the screen allows the viewer to adjust the tilt of the screen.  (*Id.*)  The location of

the hinge allowing this tilt is the subject of the disputed claim term.

The disputed terms, along with each party's proposed construction, are as follows (disputed claim term in bold):

| U.S. Patent No. 6,871,356, Claims 1 and 5: | | |
|---|---|---|
| Claim 1: ". . . the first video monitor comprising: a housing comprising a first hinge portion adjacent **an upper edge** thereof and defining a storage cavity having a floor . . . ." | | |
| Claim 5: ". . . the first video monitor comprising: a housing comprising a first hinge portion adjacent **an upper edge** thereof, the viewing screen facing the passenger compartment . . . ." | | |
| **Disputed Claim Term** | **Johnson's Construction** | **Voxx's Construction** |
| "upper edge" | Plain and ordinary meaning, or if construction is necessary, "upward edge" | "the highest surface of an object, a top surface" |

(The '356 Patent, Col. 17:36–40.)

In relevant part, the specification provides that the video monitor and housing (affixed to the back of a headrest on a vehicle seat) contain two hinges which cooperate to allow the screen structure to pivot.  (The '356 Patent, Col. 14:47—49.) These two hinges are, according to the specification, "[p]referably . . . located near an upper edge of the screen structure and housing," which causes that upper edge of the screen structure to remain mostly stationary, while a lower edge is capable of protruding substantially from the front face of the housing, providing a better viewing angle for the user.  (*Id.*)

Notably, a few months after the '356 Patent was issued to Johnson, Voxx filed a request for *inter partes* reexamination of the patent with the USPTO.  (*Inter Partes*

1  Reexamination Certificate, Pl. Opening Br., Ex. A.)  Each claim of the '356 Patent
2  was ultimately confirmed patentable; no amendments to the claim language were
3  made.  (*Id.*)

4       The difference in the parties' constructions of "upper edge" boils down to a
5  disagreement over whether the term is definite and superlative ("*the* high*est*") or
6  indefinite and comparative ("*an* upp*er*").  Johnson states that no construction is
7  necessary for this term; a Court and jury will easily understand its meaning.  (Pl.
8  Opening Br. 7.)  If construction is necessary, then Johnson's alternate position is that
9  the word "upward" should be used as a "readily understandable synonym" of "upper."
10  (*Id.*)  Johnson argues that this term must remain indefinite and comparative, allowing
11  the hinge located adjacent "an upper edge" to, in theory, be located in a variety of
12  different locations in different embodiments of the patent, so long as the location were
13  adjacent *an* upper/upward edge (not necessarily *the* upper/uppermost edge).  (*See id.*
14  at 9.)  In contrast, Voxx wishes to limit the claim term to its definite, superlative
15  version: "the highest surface of an object, the top surface."  (Def. Responsive Br. 2–3.)
16  Voxx's justification for introducing this limitation when the language of the claim
17  itself is "*an* upper edge" is that Figures 8A and 9A accompanying the specification
18  (duplicated below) illustrate the upper edge as the highest or top surface of the
19  housing.  (*Id.*)



FIG. 8A      FIG. 9A

1

2   (The '356 Patent, Figs. 8A, 9A.)

3          In addition, Voxx argues that the term "upward" is ambiguous, noting that it
4   could be construed to allow the hinge to be placed at the upward side of the bottom
5   edge of the housing.  (Def. Responsive Br. at 2.)  Voxx states that during prosecution,
6   Johnson disavowed the claim to the extent it allowed the hinge to be placed at the
7   bottom edge of the housing, in order to overcome rejections based on prior art.  (*Id.* at
8   2–3.)

9          Based on the general rule that claim construction should give preference to the
10  plain and ordinary meaning of claim terms, Johnson's construction should be upheld.
11  *See Phillips*, 415 F.3d at 1313.   Johnson's construction preserves the indefinite,
12  comparative nature of the claim language ("*an* upp*er* edge") rather than distorting it
13  into, in essence, "*the* upper*most* edge."  Especially dispositive in the Court's decision
14  is the claim language's use of the word "an," which connotes the possibility that the
15  hinge could be located on one of multiple "upper edges."  (*See* the '356 Patent, Col.
16  17:36–40.)  In addition, as Johnson points out, Figure 9A from the '356 Patent in fact
17  uses the term "upper edge" to refer to a surface that is not the highest surface of the
18  housing.  (*See* Pl. Opening Br. 8.)  Item 482 is described as "an upper edge" and also
19  "a top edge," but the "J"-shaped arrow accompanying that number clearly points to an
20  edge within the housing that is near the top, but not the highest surface.  (*See* the '356
21  Patent, Fig. 9A.)   As such, Voxx is incorrect in arguing that the specification supports
22  its construction of "an upper edge."  The Court adopts Johnson's construction for the
23  term "upper edge."

24  **B.    The '402 Patent**

25         The '402 Patent differs from other Headrest Patents in part because of the
26  manner in which the video system screen is adjustable and can be opened all the way
27  forward, like a latch.  (*See* the '402 Patent, Pl. Opening Br., Ex. B.)  The asserted
28  claim outlines a method for replacing the headrest mounted video system.

The disputed terms, along with each party's proposed construction, are as follows (disputed claim terms in bold):

| U.S. Patent No. 7,267,402, Claim 10: | | |
|---|---|---|
| "A method of replacing a mobile entertainment system, said method comprising . . . removing said first monitor from said headrest; providing a second monitor comprising: a **second housing** . . . and a **second screen structure** . . . ." | | |
| **Disputed Claim Term** | **Johnson's Construction** | **Voxx's Construction** |
| "second housing" | Plain and ordinary meaning, or if construction is necessary, then the term "second" in conjunction with the independent claim's paragraph structure, associates this proposed term with the "second monitor" | "a housing including like features relative to the first housing" |
| "second screen structure" | Plain and ordinary meaning, or if construction is necessary, then the term "second" in conjunction with the independent claim's paragraph structure, associates this proposed term with the "second monitor" | "a screen structure including like features relative to the first screen structure" |

(The '402 Patent, Col. 8:41–55.)

The relevant portion of this patent includes two aspects of the replacement

1    method: steps for removing the current headrest-mounted video system, and steps for

2    installing a replacement system.  (*Id.*)   In all, there are five steps involving the

3    replacement of a first monitor with a second monitor.  (*Id.*)   The steps are fairly

4    straightforward, and the actual method for replacement is not in issue.  The parties'

5    disagreement centers around the type of monitor the consumer should use in replacing

6    the system.  (*See* Def. Responsive Br. 5–6; Pl. Opening Br. 13–16.)  In context, the

7    claim provides that the first housing and screen structure should be replaced with a

8    second housing and screen structure.  (The '402 Patent, Col. 8:41–55.)

9        Johnson's argument is that the Court should apply the plain and ordinary

10   meaning, with fewest limitations imported, to both claim terms.  (Pl. Opening Br. 15.)

11   According to Johnson, this means that the terms must be construed simply to signify

12   that the replacement housing and screen structure comprise a second, physically

13   different structure from the first.  (*Id.*)  On the other hand, Voxx contends that the

14   terms must be construed to mean that the second screen structure and housing must

15   have identical features to the first/original housing.  (Def. Responsive Br. 5.)  Voxx

16   argues that this added limitation is necessary so that the claim is not construed so

17   broadly as to cover "upgrading" to a totally different type of screen structure or

18   housing.  (*Id.*)  Voxx's reasoning is that only one screen structure and one housing is

19   disclosed in the '402 Patent, so the claim does not support Johnson's broad

20   construction.  (*Id.*)

21       Voxx's argument appears to contradict one of the basic rules of *Phillips*: that the

22   claims of a patent are not necessarily limited to the embodiment or specification of

23   that patent, even if the claim language describes only a single embodiment.  415 F.3d

24   at 1323 (citation omitted).  While the specification discloses one type of screen

25   structure and housing, the claim should not be limited to the specification, and it is not

26   difficult to imagine numerous other iterations of a screen structure and housing that

27   could be used to replace the original system while remaining within the scope of the

28   patent.  As such, Voxx's attempt to limit the claim terms is not a valid one.  Further,

1   Voxx's assertion that the second screen structure and housing could comprise a
2   completely different "upgrade" when compared with the original screen structure and
3   housing is unsupported by logic and by physical limitations of the headrest.  (*See* Def.
4   Responsive Br. 5.)  For example, the original monitor could not be replaced with a
5   wildly different, thirty-inch screen structure and housing, because it simply would not
6   fit on the headrest.  However, the replacement screen structure may differ somewhat
7   from the original, and the limitations of the specification should not be imported into
8   claim construction.  For these reasons, the Court adopts Johnson's construction for the
9   terms "second housing" and "second screen structure."

10   **C.   The '679 Patent**

11         The '679 Patent is also a Headrest Patent.  (*See generally* the '679 Patent, Pl.
12   Opening Br., Ex. C.)  It was issued on November 11, 2008, and Johnson is the
13   assignee.  (*Id.*)  The relevant portion of Claim 1 is directed to a pivoter that stops the
14   screen in the headrest video unit from opening fully.   For example, in one
15   embodiment, a bracket is used to achieve this effect.  Figure 5B is copied below to
16   illustrate.



*FIG. 5B*

26         The disputed term in context of the broader claim language at issue in the '679
27   Patent, along with each party's proposed construction, is as follows (disputed claim
28   term in bold):

| **U.S. Patent No. 7,448,679, Claim 1 (Johnson's Patent)**: "A mobile video system comprising: a headrest; a screen structure having a front face, a rear face opposite the front face, and a first hinge portion; a **pivot-limiting portion**; and a housing . . . ." | | |
|---|---|---|
| **Disputed Claim Term** | **Johnson's Construction** | **Voxx's Construction** |
| "pivot-limiting portion" | No construction necessary.<br><br>To the extent construction is necessary, "pivot limiter, distinct from the housing and the first and second hinge portions, that limits the outward rotation of the screen structure" | This term is governed by 35 U.S.C. § 112¶6.<br><br>"a bracket [structure] that limits the rotation of the screen to less than perpendicular relative to the closed position of the screen structure [function.]" |

(The '679 Patent, Col. 7:53–62.)

The pivot-limiting portion exists to increase the safety functions of the product. (*See id.* Col 1:47–54.) The device restrains the video screen from being opened fully in such a way that it could be perpendicular to the housing. (*Id.* at Col. 8:61–9:11.) In addition, if force is applied to the front of the screen while it is tilted slightly outward (as far as the pivot-limiting portion will allow), the pivot-limiting portion will not resist the force and the screen will close fully. (*Id.* at Col. 1:47–54.) Both of these aspects of the product protect a person whose head may be thrown forward in a crash and hit the front of the screen. (*See id.*)

The parties disagree about whether this term is governed by 35 U.S.C. § 112¶6. (*See* Pl. Opening Br. 19–21; Def. Responsive Br. 7–10.) If it is, then the scope of the term must be limited to that set forth in the specification. *See Philips*, 415 F.3d at 1303. But if § 112¶6 does not apply, as Johnson argues, then the term should not be

1  limited to the specification.  (*See* Pl. Opening Br. 19–21.)

2       Johnson points out that Voxx failed to identify this term as being governed by §

3  112¶6 in its (1) invalidity contentions; (2) disclosure of terms for construction; and (3)

4  exchange of preliminary claim constructions and extrinsic evidence.  (*See id.* at 19–

5  20.)  The Court's Patent Local Rules require disclosure of terms that a party intends to

6  argue are governed by § 112¶6 in each of those three filings, and Voxx did not disclose

7  this term in any of them.  (*See* Patent L.R. 3-3(c); 4-1(a); 3-6.)

8       However, Voxx did identify the term as falling under § 112¶6 prior to the claim

9  construction hearing, and the Patent Local Rules do not identify non-application of §

10  112¶6 as the penalty for failing to timely identify a term as being governed by such.

11  (*See* Def. Responsive Br. 7; Patent L.R. 3-3(c); 4-1(a); 3-6.)  For these reasons, the

12  Court declines to decide this term on Voxx's failure to timely identify the application

13  of § 112¶6, and instead reaches the merits of constructing the term.

14       The wording of the claim does not sufficiently define the structure that acts as a

15  "pivot-limiting portion."  (*See* the '679 Patent, Col. 8:55 – 9:11.)  Because the claim

16  term lacks the word "means," § 112¶6 should apply if the claim describes a function

17  without sufficiently reciting corresponding structure.  *Williamson*, 792 F.3d at 1349.

18  Here, the claim states that a pivot-limiting portion is part of the claimed invention and

19  describes the way that device limits rotation of the screen structure relative to the

20  housing.  (*Id.*)  However, this leaves open the question of what structure comprises the

21  pivot-limiting portion.  (*See id.*)  As such, the claim recites a function without

22  corresponding structure, and § 112¶6 applies.  In order to find the corresponding

23  structure, the Court draws from the specification and determines that the structure is a

24  bracket.  (*See id.* Col. 7:63–66.)  As a result, the appropriate construction must reflect

25  what is recited in the specification.  The Court therefore adopts Voxx's construction of

26  "pivot-limiting portion."

27  **D.  The '125 Patent**

28       This Overhead Patent, owned by Johnson, was issued on May 27, 2008.  (*See*

*generally* the '125 Patent, Col. 2:25—34; 3:4—6; 4:49—53, Pl. Opening Br., Ex. D.) Like some of the other patented products, the screen of this system can pivot to provide a preferred angle for the viewer. (*See id.*) The angle of this pivoting, and the screen structure's angular relationship to the roof of the vehicle, is the subject of the dispute for this claim term.

The disputed term in context of the broader claim language at issue in the '125 Patent, along with each party's proposed construction, is as follows (disputed claim term in bold):

| U.S. Patent No. 7,379,125, Claims 1-6; 8-11 (Johnson's Patent): | | |
|---|---|---|
| "An assembly mountable to an interior surface of a roof of a vehicle, the assembly comprising: a housing . . . and a video display . . . **substantially parallel with an interior surface of a roof** . . . ." | | |
| **Disputed Claim Term** | **Johnson's Construction** | **Voxx's Construction** |
| "substantially parallel with an interior surface of a roof" | "substantially parallel with the ceiling of a vehicle cabin" | "essentially parallel with an interior surface of a roof" |

(The '125 Patent, Col. 2:25–34; 3:4–6; 4:49–53.)

The parties have already agreed on the meaning of "interior surface of a roof of a vehicle cabin"; their agreed construction is "ceiling of a vehicle cabin." (*See* Pl. Opening Br. 23–24.) Johnson and Voxx disagree about the extent to which the screen structure can pivot backwards, measured by whether the screen is parallel with the ceiling of the vehicle cabin. (*See id.* at 22–25; Def. Responsive Br. 4.) Figure 9 from the patent, copied below, illustrates the backwards-extended position of the screen structure.





*FIG.9*

Johnson seeks to maintain the original "substantially" phrasing in the construction. (*See* Pl. Opening Br. 23–25.)  Johnson offers *Webster's Third New International Dictionary of the English Language, Unabridged* 2280 (1986) as extrinsic evidence for the meaning of "substantially"; *Webster's* defines it as "being that specified to a large degree or in the main." (*Id.* at 24.)  Johnson also argues that the plain meaning of "substantially" in the relevant context (overhead monitors mounted in vehicles) is something that jurors would have everyday experience with, given the ubiquity of such monitors. (*Id.*)  Johnson substitutes "ceiling of a vehicle cabin" for "roof" in its construction; this reflects the agreed construction for this term, noted above. (*See* Pl. Opening Br. 23–24.)

Voxx's argument is that Johnson need not import the phrase "ceiling of a vehicle cabin" into its construction, suggesting that it will "only act to confuse the jury."  Further, Voxx defends its insertion of "essentially" for "substantially" by stating that the latter is the commonly understood meaning of the former. (Def. Responsive Br. 4.)

Voxx's argument that "ceiling of a vehicle cabin" should not be imported to replace "roof" in the construction focuses on an immaterial factor, as this phrasing has already been agreed upon between the parties as a construction. (*See* Pl. Opening Br. 23.)  Moreover, Voxx's defense of its replacing "substantially" with "essentially" is weak.  Voxx has merely replaced one adverb with another; there is nothing to suggest that a jury would understand the meaning of "essentially" any more than it would "substantially," and Voxx has produced no evidence to suggest that "essentially" actually represents the commonly-understood meaning of "substantially."  That being said, the lack of clarity that either "essentially" or "substantially" provide is not reason

to adopt Johnson's construction; the claim calls for a more precise construction. As such, the Court adopts the following construction for the term "substantially parallel with an interior surface of a roof": "having an angular relationship between 170 degrees and 180 degrees, inclusive, with the ceiling of a vehicle cabin." This construction provides for an arc of ten degrees difference in the relationship of the display to the roof when the display is fully extended.

**E.     The '762 Patent**

The '762 Patent is an Overhead Patent and belongs to Voxx. (*See generally* the '762 Patent, Pl. Responsive Br., Ex. B, ECF No. 76) It was issued on July 7, 1998. (*Id.*) The console of this patent includes a leading end, a trailing end, and an optional central section. (*Id.* Col 2:2–6.) The monitor, video source, and wiring for this entertainment system are all located within a console; however, the specification does not limit the console to a specific size or shape. (*See id.*)

The disputed terms in context of the broader claim language at issue in the '762 Patent, along with each party's proposed construction, are as follows (disputed claim terms in bold):

| **U.S. Patent No. 5,775,762, Claim 1:** |
|---|
| "An overhead console . . . comprising: an **elongated console housing** . . . **a compartment for storing a source of video signals formed in the trailing end of the console housing**, and **conductive means associated with the compartment for connecting the television monitor to the compartment to provide ready attachment of the source of video signals to the television monitor and transmission of video signals between the source of video signals and the television monitor**." |

| Disputed Claim Term | Johnson's Construction | Voxx's Construction |
|---|---|---|
| "elongated console housing" | "A console housing longer than it is wide, [wherein | "a console housing that is extended or lengthened to include |

16

| | length is determined by the longitudinal axis of symmetry of a vehicle and width is determined by the axis of the monitor width]," otherwise indefinite | a television monitor and a compartment capable of storing a course of video signals" |
|---|---|---|
| "a compartment for storing a source of video signals formed in the trailing end of the console housing" | "a separate and partitioned space formed entirely within the trailing end of the console housing" | Voxx asserts that this claim term should be given its plain and ordinary meaning (no construction needed). |
| "conductive means associated with the compartment for connecting the television monitor to the compartment to provide ready attachment of the source of video signals to the television monitor and transmission of video signals between the source of video signals | This term is governed by 35 U.S.C. § 112¶6.<br><br>Function:<br><br>Connecting the television monitor to the compartment to provide ready attachment of the source of video signals to the television monitor and transmission of video signals between the source of video signals and the television monitor | This term is governed by 35 U.S.C. § 112¶6.<br><br>Function:<br><br>Connecting the television monitor to the compartment to provide ready attachment of the source of video signals to the television monitor and transmission of video signals between the source of video signals and the television monitor<br><br>Structures: |

| and the television monitor" | Structures:<br><br>Insulated electrical wires, and this term is not entitled to any equivalents under 35 U.S.C. § 112¶6 | Electrical wires or equivalents thereof |
| --- | --- | --- |

(The '762 Patent, Col. 5:36–50.)

There are several sources of disagreement on the terms in the '762 Patent. The parties submit competing proposed constructions regarding the shape and size of the console containing the monitor, video source, and wiring. (*See* Def. Opening Br. 10–15 (ECF No. 75); Pl. Responsive Br. 2–10.) There are three disputed terms for the '762 Patent, and each is addressed in turn below.

### 1.   "Elongated console housing"

Johnson argues that the first disputed term, "elongated console housing," must be construed as meaning "longer than it is wide." (Pl. Responsive Br. 2.) Johnson offers extrinsic dictionary evidence to support this definition. *Webster's Third New International Dictionary of the English Language, Unabridged* 737 (1981) defines "elongated" as "having a form notably long in comparison to its width," and *The Concise Oxford Dictionary* 439 (9th ed 1995) defines it as "long in relation to its width." Further, Johnson argues that the patent figures and specification support Johnson's construction (Figure 3 from the '762 patent is copied below):



Voxx wishes to avoid a limitation on this claim term, and it points to the specification's statement that "the console may take on a variety of shapes without departing from the spirit of the present invention." (*See* the '762 Patent, Col. 3:18–20.)   Voxx defines "elongated" as "big enough to include the system's key components and it could be elongated in multiple orientations." (Def. Opening Br. 12.)  According to Voxx and as outlined in the specification, the central section of the console is optional; other possible embodiments could include a more compact console.  (*See id.* at 13.)

Neither party's proposed construction appears to correctly define the term "elongated console housing."   Based on the commonly-understood meaning of the word "elongated," and bolstered by the dictionary definitions provided, Johnson is correct in asserting that "elongated" means "longer than it is wide."  (*See* Pl. Responsive Br. 2–10.)  To that extent, its proposed construction will control.  Voxx's use of the words "extended"/"lengthened" to define "elongated" is an attempt to broaden the scope of the term in a way that does not comport with the meaning of the original phrasing, "elongated." (*See* Def. Opening Br. 10–15.)  However, Johnson's definition of the way length and width are determined ("by the longitudinal axis of symmetry of a vehicle and . . . by the axis of the monitor width," respectively), imports an unnecessary limitation into the construction.  "Elongated console housing" does not dictate the orientation of the console, but it does require that the console be longer than it is wide.  Further, while the Background of the Invention and Description of the Prior Art section of the '762 Patent states that these types of overhead consoles are generally "mounted coincident with the longitudinal axis of symmetry of the vehicle," nothing in the actual claim language commands this.  (*See* the '762 Patent, Col. 1:14–17.)  Therefore, the Court adopts the construction "a console housing longer than it is wide" for the term "elongated console housing."

**2.      "A compartment for storing a source of video signals formed in the trailing end of the console housing"**

19

The specific word at the center of this disputed term is "compartment." Johnson wishes to define "compartment" as a separate space that is divided (partitioned) from the encapsulating space. (Pl. Responsive Br. 4.) Johnson offers some dictionary definitions of "compartment" to support this, including "a space within a larger space, separated from the rest by partitions" from *The Oxford English Dictionary* 593 (2d ed 1989). (*See* Pl. Responsive Br. 4.)

Voxx, on the other hand, argues that no construction is needed for this term. (Def. Opening Br. 10–11.) It asserts that "compartment" is a commonly understood term and that no additional definition is needed. (*Id.*) Voxx's main issue with Johnson's proposed construction is that it unnecessarily restricts the claim by using the language "a separate and partitioned space formed entirely within" in its proposed construction. (*Id.*) Voxx cites *Phillips* in supporting its argument that the claim scope should not be limited to the embodiment of the invention. (*Id.*); *Phillips*, 415 F.3d at 1315.

Though Voxx is correct, to a degree, that "compartment" is a commonly understood term, Johnson's proposed construction adds the necessary structure and gloss to a claim term that otherwise could be overbroad. As *Phillips* establishes, a claim term should be read and constructed in the context of the claim in which it appears and in the context of the entire patent. 415 F.3d at 1315. Here, the word "compartment" is followed closely by "formed in the trailing end of the console housing." (The '762 Patent, Col. 5:43–50.) Johnson's proposed construction clarifies the meaning of "compartment" by using the dictionary definition "a separate and partitioned space." (Pl. Responsive Br. 4–5.) Based on the definition of "compartment" as "a separate and partitioned space," it follows that the separate and partitioned space is formed apart from other areas within the encapsulating space. Thus, Johnson's proposed construction language of "formed entirely within the trailing end of the console housing" is appropriate.

As such, the Court adopts Johnson's construction for this term.

20

### 3.    "Conductive means associated with . . . the television monitor."

The parties agree that 35 U.S.C. § 112¶6 governs this disputed claim term, but they disagree on whether that means that the term "insulated electrical wires" is entitled to equivalents under § 112¶6.  Here, use of the word "means" in the claim language triggers § 112¶6's applicability, and the corresponding structure can be found in the specification.  (The '762 Patent, Col. 5:43–50); *see Callicrate, Inc.*, 427 F.3d at 1368.  The parties agree on which portion of the claim term represents the function.  (*See* Def. Opening Br. 13.)  The function that this term describes, for purposes of § 112¶6, is "connecting the television monitor to the compartment to provide ready attachment of the source of video signals to the television monitor and transmission of video signals between the source of video signals and the television monitor."  (*Id.*)  The dispute centers on the corresponding structures, which Johnson asserts are "insulated electrical wires, and this term is not entitled to any equivalents under 35 U.S.C. § 112¶6."  (Def. Opening Br. 13.)  Voxx contends that the corresponding structures are "electrical wires or equivalents thereof."  (*Id.*)

The Court finds that the scope of this means-plus-function claim term includes equivalents of electrical wires.  The fact that Voxx added a limitation in the course of patent prosecution does not estop it from applying the doctrine of equivalents.  (*See* Response to Office Action, Dec. 1997, 9, Pl. Responsive Br., Ex. H.)  Voxx is correct in citing *Engingeered Products Co. v. Donaldson Co., Inc.*, as an example of a case where a court rejected an estoppel argument similar to Johnson's.  313 F.Supp.2d 951 (N.D. Iowa 2004).  *Engineered Products* holds that estoppel in the context of patent equivalents does not apply to means-plus-function claims.  *Id.* at 981-82.  The Supreme Court case *Festo Corporation v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, underlies the relevant rule in *Engineered Products*.  *See* 535 U.S. 722 (2002) (standing for the rule that where amendments to a patent application narrow the claims, the prosecution history estops the patentee from later claiming the rejected equivalents, but leaving open certain types of amendments as not triggering estoppel).

Without the estoppel argument, Johnson has no valid claim that Voxx should not be entitled to equivalents for "insulated electrical wires."  The general § 112¶6 rule is that the covered structure includes what is laid out in the specification, plus equivalents.  *Palumbo*, 762 F.2d at 974.  Therefore, the Court adopts Voxx's construction for this term.

**F.   The '124 Patent**

The '124 Patent is a portable video/entertainment system.  (*See generally* the '124 Patent, Pl. Responsive Br., Ex. J.)  Voxx is the assignee for this patent.  (*Id.*)  It was issued on May 23, 2006.  (*Id.*)  The basic configuration of the patented product is a portable DVD-stereo that can be used in the home or mounted with straps between car seats (and removed as needed).  (*Id.*)

The disputed terms in context of the broader claim language at issue in the '124 Patent, along with each party's proposed construction, are as follows (disputed claim terms in bold):

| U.S. Patent No. 7,050,124, Claims 38 and 51: | | |
|---|---|---|
| Claim 38: "A video system mounted to a seat in a vehicle comprising . . . at least one display is mountable to the assembly housing at **a location between the first and second panels**." | | |
| Claim 51: "A **portable** video system comprising . . ." | | |
| **Disputed Claim Term** | **Johnson's Construction** | **Voxx's Construction** |
| "a location between the first and second panels" | "A location along the common physical border shared by the first and second panels" | Voxx asserts that this claim term should be given its plain and ordinary meaning:  "One skilled in the art would readily understand the meaning of a location between the first and |

| | | |
|---|---|---|
| | | second panels." |
| "portable" | "easily transferable by a user between vehicles and other settings" | Voxx asserts that this term is merely a portion of the preamble and should not be construed as a claim limitation.  Therefore, Voxx contends that no construction is necessary. |

(The '124 Patent, Col. 11:41–42; 12:27.)

The technology here is fairly straightforward; the dispute regarding the terms lies in the distinction between two simple phrases.  First, the parties disagree about whether "a location between the first and second panels" means that the location must be along the common physical border shared by the two panels, or whether it can be construed more broadly.  (*See* Pl. Responsive Br. 11–13; Def. Opening Br. 18.) Second, the parties argue over whether "portable," a word in the preamble of the patent, should constitute a limitation.  (*See* Pl. Responsive Br. 13–14; Def. Opening Br. 18–19.)

### 1.    "A location between the first and second panels"

The Court is unpersuaded by Johnson's argument that the "location" in this claim term refers to a place along the common physical border between the first and second panels.  (*See* Pl. Responsive Br. 11.)  While it is true that the claim language describes the two panels as being "adjacent" to one another, this does not necessarily mean that the two panels share a common physical border.  (*See* the '124 Patent, Col. 11:39.)  In fact, the claim language suggests the opposite interpretation.  The claim states that "at least one display is mountable to the assembly housing at a location between the first and second panels," which suggests that there is a space between the two panels in which to mount a display.  (*See id.* Col. 11:40–42.)  For this reason, the court adopts Voxx's construction of the term "a location between the first and second panels."

2. **"Portable"**

The conflict here revolves around whether "portable," which is part of the preamble of the claim, should act as a limitation. *Pacing Technologies, LLC v. Garmin International, Inc.*, provides clarity here; it stands for the rule that preamble language can limit the scope of a claim when limitations in the body of the claim rely upon the preamble and draw support from it. 778 F.3d 1021, 1023-24 (Fed. Cir. 2015). Put another way, if the preamble language describes what a claimed invention is or does (rather than a purpose or intended use), it can act as a limitation. *See id.* The Court finds that the relevant preamble language in this instance does just that. Indeed, this patent is different from the others presently being constructed because it is meant to be removable from a car when not in use; the Background of the Invention section of this patent specifically describes the anti-theft benefits of this feature. (*See* 'the 124 Patent, Col. 1:28.) As such, Voxx should not now be allowed to assert that "portable" is only one intended use; this does not describe the overall purpose of the invention. (*See* Def. Opening Br. 19.) The Court adopts Johnson's construction of this term.

**G. The '274 Patent**

The '274 Patent is a Headrest Patent. (*See generally* the '274 Patent, Pl. Responsive Br., Ex. L.) Voxx is the assignee, and the patent was issued on July 17, 2007. (*Id.*)

The disputed term in context of the broader claim language at issue in the '274 Patent, along with each party's proposed construction, is as follows (disputed claim term in bold):

| U.S. Patent No. 7,245,274, Claim 11 (Voxx's Patent): | | |
|---|---|---|
| "A video system comprising: a base portion . . . wherein the base portion **accommodates** a media player . . . ." | | |
| **Disputed Claim Term** | **Johnson's Construction** | **Voxx's Construction** |

| "accommodates" | "the base portion, and not the display, incorporates a media player" | "provides sufficient space for" |
|---|---|---|

(The '274 Patent, Col. 6:41–46.)

In broader context, this claim term is about which portion of the invention houses the media player that allows the product to function. (*See id.*) Johnson's position on this term is that some of the figures included within the patent represent a configuration that is not in the spirit of the invention. (*See* Pl. Responsive Br. 16–17.) Specifically, Johnson notes that Figures 3A–3C show a media player within the door/display that is hinged or attached to the base (rather than being situated within the base itself). (*See id.*) Johnson argues that the correct construction of this term is such that it requires an allocation of sufficient space within the base portion (and *not* the display/door) to incorporate a media player. (*Id.*)

This is an attempt to limit the term "accommodates" in a way that is already limited elsewhere in the claim language. Johnson's proposed construction makes explicit that there must be sufficient space left in the base, not the display/door, to incorporate the media player. (*Id.*) The original claim language already provides that "the *base portion* accommodates a media player." (The '274 Patent, Col. 6:43.) As such, it is an unnecessary redundancy to construe "accommodates" to include only base portion. The Court therefore adopts Voxx's construction of the term "accommodates."

## H.    The '892 Patent

The '892 Patent is unique among the patents at issue here in that it can be installed in a variety of locations within a vehicle's interior. (*See generally* the '892 Patent, Pl. Responsive Br., Ex. M.) It was issued on January 13, 2004, and Voxx is the assignee for this patent. (*Id.*)

The disputed terms in context of the broader claim language at issue in the '892 Patent, along with each party's proposed construction, are as follows (disputed claim

terms in bold):

| **U.S. Patent No. 6,678,892, Claims 1, 25, 26:** | | |
|---|---|---|
| Claim 1: ". . . **at least one wireless transmitter** operatively coupled to said audio **bus**, **adapted to wirelessly and simultaneously transmit a plurality of audio programs from each of the plurality of input devices to a plurality of wireless headphones**." | | |
| [The terms are substantially the same in Claims 25 and 26; differences shown below] | | |
| **Disputed Claim Term** | **Johnson's Construction** | **Voxx's Construction** |
| Three similar phrases combined for efficiency purposes:<br><br>"at least one wireless transmitter . . ., adapted to wirelessly and simultaneously transmit a plurality of audio programs from each of the plurality of input devices to a plurality of | "at least one wireless transmitter, **each of which** is operatively coupled to aid said audio bus, and **each of which** is adapted to wirelessly and simultaneously . . ." (claim 1) | Voxx asserts that this claim term should be given its plain and ordinary meaning: "One skilled in the art would readily understand the meaning of [these terms]." |

| | | |
|---|---|---|
| wireless headphones" (claim 1) | | |
| "a wireless transmitter . . ., adapted to wirelessly and simultaneously transmit a plurality of audio programs from at least some of the plurality of input devices to a plurality of wireless headphone sets" (claim 25) | "a wireless transmitter, **<u>each of which</u>** is operatively coupled to said audio bus, and each of which is adapted to wirelessly and simultaneously . . ." (claim 25) | |
| "a wireless transmitter . . ., adapted to wirelessly and simultaneously transmit the audio signals from the at least two input devices to at least | "a wireless transmitter, **<u>each of which</u>** is operatively coupled to said audio bus, and each of which is adapted to wirelessly and simultaneously . . ." (claim 26) | |

| two wireless headphone sets, so that each wireless headphone set receives an audio signal from a different one of the at least two input devices" (claim 26) | | |
|---|---|---|
| "bus" | "one or more electrical conductors carrying similar types of signals" | "one or more wires or other signal transmission means" |

(The '892 Patent, Col. 10:33–34, 41–45; 12:32–36, 43–48.)

The '892 Patent discloses a video system for a vehicle that allows a user to select among many audio and visual inputs. (*See id.* Col. 4:42.) The product uses wireless transmitters to allow two people in a car to listen to different audio and video programs at the same time. (*Id.* Col. 3:63–4:2.) Two different embodiments exist for this patent: in one, a single wireless transmitter transmits two audio programs simultaneously via Code-Division Multiple Access ("CDMA") technology. (*Id.* Col. 12:1–4.) In the other, two wireless transmitters each transmit a different audio program on different frequencies. (*Id.* Col. 8: 46–47.) The parties dispute the construction of four terms in this claim, three of which are very similar and thus are treated as one (the "Wireless Transmitter" terms).

### 1. The Wireless Transmitter Terms

These three terms (from claims 1, 25, and 26) provide that certain embodiments of the claimed invention include a means for wirelessly and simultaneously transmitting audio signals from at least two input devices to at least two wireless

headphone sets.  (*See id.* Col. 10:41–45; 12:32–36, 43–48.)  Johnson attempts to limit the scope of this term by proposing a construction that would mean *each* of the one or more wireless transmitters in the claimed invention must be capable of wirelessly and simultaneously transmitting audio signals in such a way.  (Pl. Responsive Br. 18–20.)  Voxx asserts that this term should be given its plain and ordinary meaning.  (Def. Opening Br. 21.)

Based on the language of the claims and the specification, each wireless transmitter should not necessarily have to be adapted to wirelessly and simultaneously transmit multiple audio programs at once.  Johnson's attempt to limit the claim scope by construing the term to mean that each transmitter must include this capability would be placing a limitation on the term that is not supported by the plain language of the claim.  Claim 20 already requires that at least one wireless transmitter be adapted to transmit multiple audio programs using CDMA technology.  (The '892 Patent, Col. 12:1–4.)  Whether the other transmitters (should they be included in an iteration of the product) make use of this technology does not appear to be required by the claim.  As such, the Court adopts Voxx's construction of this term.

### 2.     "Bus"

The dispute over "bus" revolves around whether the bus must be comprised of electrical wire(s) that carry similar types of signals.  Johnson argues that without this specificity, "bus" would simply mean "any possible way to transmit a signal," which could include things like Sonar and take the claim scope far outside the spirit of the invention.  (Pl. Responsive Br. 20.)  Voxx's position is that the term "bus" could be embodied by multiple different means of signal transmission, not just wires.  (Def. Opening Br. 22.)  The language of the specification is instructive here.  It states in relevant part, "While the buses . . . are simply aggregations of wires carrying similar types of signals, other types of buses may be employed.  For example, one or more wires or other signal transmission means may be used . . . ." (The '892 Patent, Col. 9: 62–64.)  This language suggests that the means of transmission within a bus must

29

carry similar types of signals, but that the means do not have to take the form of wires. And while limitations from the specification should not be imported into the construction of a claim term, here, the specification adds breadth rather than a limitation to construction. *See Comark Commc'ns, Inc.*, 156 F.3d at 1186-87. In light of the claim language and specification, the Court decides to adopt its own construction of the term, which is a combination of the parties' proposed constructions. The Court adopts the construction, "one or more wires or other signal transmission means carrying similar types of signals."

## I.     The '355 Patent

Finally, the '355 Patent is another of the Headrest Patents; it was issued on November 23, 2010. (*See generally* the '355 Patent, Pl. Responsive Br., Ex. P.) Voxx is the assignee for this patent. (*Id.*)

The disputed terms in context of the broader claim language at issue in the '355 Patent, along with each party's proposed construction, are as follows (disputed claim terms in bold):

| U.S. Patent No. 7,839,355, Claims 1, 14, 26, 38: | | |
|---|---|---|
| "A display device for a vehicle having a seat, comprising: an **assembly housing** . . . at least one wireless transmitter adapted to wirelessly transmit the audio signals . . . and **the face portion rests outside of the hole on an outside surface of the seat** . . . ." | | |
| **Disputed Claim Term** | **Johnson's Construction** | **Voxx's Construction** |
| "assembly housing" | "a housing constituting one integral body with a display" | Voxx asserts that this claim term should be given its plain and ordinary meaning: "One skilled in the art would readily understand the meaning of assembly housing." |

| "the face portion rests outside of the hole on an outside surface of the seat" | The sides and recessed portion of a hole are not part of the outside surface of the seat. | Voxx asserts that this claim term should be given its plain and ordinary meaning: "One skilled in the art would readily understand the meaning of [the term] when read in the context of the specification and drawings of the '355 Patent." |
| --- | --- | --- |

(The '355 Patent, Col. 10:17–18, 23–33.)

This patent discloses a video system for a seatback wherein the "rear portion" of the video system rests in a hole in the seatback/headrest, and the front of the device rests on top of the surface of the seatback/headrest.  (*Id.*)  The parties disagree on whether the assembly housing disclosed in this patent must constitute one solid, integrated body.  (*See* Pl. Responsive Br. 24–25; Def. Opening Br. 23.)  In addition, there is a dispute over what it means for the device to rest on a surface of a seat that is outside of a hole.  (*See* Pl. Responsive Br. 21–23; Def. Opening Br. 22–23.)

### 1.    Assembly Housing

In order for this claim term to be validly limited to "a housing constituting one integral body with a display," one of the *Thorner* scenarios would need to apply.  669 F.3d at 1365 (holding that meanings other than the "ordinary and customary" will supersede when a patentee sets out a definition and acts as its own lexicographer or when the patentee disavows the full scope of a claim term either in the specification or during prosecution).  The Court is unpersuaded by Johnson's attempt to show that disavowal occurred through Voxx's linking of the claim term to a specific embodiment.  (*See* Pl. Responsive Br. 25; Response to Office Action, Aug. 2009,11, Pl. Responsive Br., Ex. R.)  In reality, Voxx only referenced the specific embodiment with a "*see, e.g.*," citation, implying that other embodiments could exist within the claim scope.  (*See id.*)  Without any other valid reason for limiting this claim term, the

1    Court adopts Voxx's construction.

2    **2.    "The face portion rests outside of the hole on an outside surface of**
3        **the seat"**

4        The "hole" referred to in this term, in the context of the overall patent, is a

5    recessed portion of the seatback which houses the device.  (*See* the '355 Patent, Col.

6    9:3–10.)  The dispute over this term is whether the display's positioning must be such

7    that the screen is flush with the surface of the seat, or whether it can be slightly

8    recessed into a surface of the seat.  (*See* Pl. Responsive Br. 21–23; Def. Opening Br.

9    22–23.)  The specification provides the following description of this positioning:

10   "When mounted in a vehicle seat, the rear portion is positioned in the vehicle seat so

11   that the face portion sits substantially flush with the surface of the seat."  (The '355

12   Patent, Col. 9:3–5.)  Johnson, however, wishes to limit this claim term to "the sides

13   and recessed portion of a hole are not part of the outside surface of a seat."  (Pl.

14   Responsive Br. 21.)

15       Similarly to Johnson's proposed construction for "accommodates" in the '274

16   Patent, this proposed construction attempts to add a limitation that the claim language

17   itself already establishes.  The claim language's plain and ordinary meaning makes

18   clear what Johnson's construction attempts to define: that "outside" does not mean

19   "within," or even slightly within, with respect to the hole/recessed portion.  (*See* the

20   '355 Patent, 10: 23–33.)  In addition, Johnson's construction is not worded in a way

21   that could stand in for the existing claim language and make grammatical sense.  Such

22   a construction would likely serve to confuse jurors.  For these reasons, the Court

23   adopts Voxx's construction of this term.

24                          IV.    **CONCLUSION**

25       For the above reasons, the Court hereby adopts the following table of constructions

26   for the "significant" disputed terms in this case.

27

28

| Term | Patent | Court's Adopted Construction |
|------|--------|------------------------------|

| "upper edge" | 6,871,356 | Plain and ordinary meaning (no construction necessary) |
|---|---|---|
| "second housing" | 7,267,402 | Plain and ordinary meaning (no construction necessary) |
| "second screen structure | 7,267,402 | Plain and ordinary meaning (no construction necessary) |
| "pivot-limiting portion" | 7,448,679 | "a bracket [structure] that limits the rotation of the screen to less than perpendicular relative to the closed position of the screen structure [function]" |
| "substantially parallel with an interior surface of a roof" | 7,379,125 | "having an angular relationship between 170 degrees and 180 degrees, inclusive, with the ceiling of a vehicle cabin." |
| "elongated console housing" | 5,775,762 | "a console housing longer than it is wide" |
| "a compartment for storing a source of video signals formed in the trailing end of the console housing" | 5,775,762 | "a separate and partitioned space formed entirely within the trailing end of the console housing" |
| "conductive means associated with the compartment for connecting | 5,775,762 | This term is governed by 35 U.S.C. § 112¶6. |

| | | |
|---|---|---|
| the television monitor to the compartment to provide ready attachment of the source of video signals to the television monitor and transmission of video signals between the source of video signals and the television monitor" | | Function:<br><br>Connecting the television monitor to the compartment to provide ready attachment of the source of video signals to the television monitor and transmission of video signals between the source of video signals and the television monitor<br><br>Structures:<br><br>Electrical wires or equivalents thereof |
| "a location between the first and second panels" | 7,050,124 | Plain and ordinary meaning (no construction necessary) |
| "portable" | 7,050,124 | "easily transferable by a user between vehicles and other settings" |
| "accommodates" | 7,245,274 | "provides sufficient space for" |
| Three similar phrases combined for efficiency purposes: | 6,678,892 | Plain and ordinary meaning (no construction necessary) |

| | | |
|---|---|---|
| "at least one wireless transmitter . . ., adapted to wirelessly and simultaneously transmit a plurality of audio programs from each of the plurality of input devices to a plurality of wireless headphones" (claim 1)

"a wireless transmitter . . ., adapted to wirelessly and simultaneously transmit a plurality of audio programs from at least some of the plurality of input devices to a plurality of wireless headphone sets" (claim 25)

"a wireless transmitter . . ., adapted to wirelessly and simultaneously transmit the audio signals from the at least two input devices to at least two wireless headphone sets, so that each wireless headphone set | | |

| | | |
|---|---|---|
| receives an audio signal from a different one of the at least two input devices" (claim 26) | | |
| "bus" | 6,678,892 | "one or more wires or other signal transmission means carrying similar types of signals" |
| "assembly housing" | 7,839,355 | Plain and ordinary meaning (no construction necessary) |
| "the face portion rests outside of the hole on an outside surface of the seat" | 7,839,355 | Plain and ordinary meaning (no construction necessary) |

**IT IS SO ORDERED**.

November 16, 2016

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**