# United States District Court
# Central District of California

| | |
|---|---|
| JOHNSON SAFETY, INC., <br><br> Plaintiff, <br><br> v. <br><br> VOXX INTERNATIONAL CORPORATION; VOXX ELECTRONICS CORPORATION; and INVISION AUTOMOTIVE SYSTEMS INC., <br><br> Defendants. | Case No. 5:14-cv-02591-ODW(DTBx) <br><br> **ORDER DENYING DEFENDANTS' MOTION TO CONSOLIDATE [122]; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [134]; DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS [119]; and DENYING PLAINTIFF'S MOTION TO STAY [117]** |

## I.   INTRODUCTION

This suit involves cross-claims for patent infringement, with both Plaintiff-Coutnerdefendant Johnson Safety, Inc. ("JSI") and Defendant-Counterclaimants Voxx International Corporation, Voxx Electronics Corporation, and Invision Automotive Ssytems Inc. (collectively, "Voxx") owning patent portfolios.  There are four motions

currently pending before the Court. JSI moves for partial summary judgment (ECF No. 134) and a stay of Voxx's counterclaims (ECF No. 117), while Voxx moves to dismiss one of JSI's claims (ECF No. 119) and to consolidate this case with a related one (ECF No. 122). All four motions are fully briefed and ready for decision.[1]

## II. FACTUAL AND PROCEDURAL BACKGROUND

The patents in this case describe video systems and monitors that can be affixed to or temporarily placed inside the interior of a passenger vehicle. (*See* Compl. ¶¶ 7–23, ECF No. 1; Countercompl. ¶¶ 17–36, ECF No. 42.) For brevity's sake, a more thorough discussion of each patent and the relevant claims of infringement will be discussed will be reserved for the analysis of each respective motion.

On October 28, 2016, the Court held a claim construction hearing on fifteen total terms, with five of the terms coming from JSI's patents and ten coming from Voxx's. (*See* ECF No. 90.) On November 16, 2016, the Court issued its Order construing the terms. (ECF No. 95.)

## III. VOXX'S MOTION TO CONSOLIDATE

As a preliminary matter, the Court disagrees with Voxx's argument that this case should be consolidated with related case *Voxx International Corporation et al. v. Johnson Safety Inc.*, styled as 2:17-cv-00358-ODW-DTB ("the Transferred Case").

Voxx contends that the Transferred Case, originally filed in the Southern District of Indiana and transferred to this Court, is sufficiently related to the instant action to warrant consolidation. (*See* Mot. to Consolidate.) In the Transferred Case, Voxx asserts infringement of five of its patents against JSI. (*See id.* at 1.) None of the patents at issue in the Transferred Case are the same as the patents at issue in this case, but Voxx says that the patents are related because they are "in the same family" as the patents in this suit and/or that they "share similar claim language" with a patent asserted as invalidating art in the instant action. (*Id.* at 2–3.) Voxx does not dispute

---

[1] After carefully considering the papers filed in support of and in opposition to the Motions, this Court deems the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

2

that consolidating the two cases would delay trial, now less than 50 days away, but it suggests that the overall efficiencies gained through consolidation outweigh any such delay. (*See* Reply to Mot. to Consolidate 1, ECF No. 133.)

## A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 42, a district court may consolidate cases that involve common questions of law or fact. Fed. R. Civ. P. 42(a)(2); *Inv'rs Research Co. v. U.S. Dist. Court for the Cent. Dist. of Cal.,* 877 F.2d 777, 777 (9th Cir. 1989). "To determine whether to consolidate, a court weighs the interest of judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation." *Id.*

## B. Analysis

The benefits of consolidation do not outweigh the potential for delay in this instance. The present action was filed years before the Transferred Case, and extensive discovery, a claim construction hearing, and motion practice have already taken place. The Transferred Case, on the other hand, is still in its infancy, with little discovery and no claim construction to speak of. To make matters worse, none of the patents in the Transferred Case overlap directly with the patents at issue here; in essence the Court would be left to start entirely from scratch. As such, the benefits of consolidation would be minimal. In contrast, the burden and delay would be great: the case at bar is on the eve of trial, and the parties have not alerted the Court to any reason they will not be ready for trial next month on May 30, 2017. Accordingly, the Court **DENIES** Voxx's Motion to Consolidate.

### IV. JSI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

JSI asks the Court to find that it is not liable for infringement of Voxx's asserted patents as a matter of law, either because the patents are invalid or because JSI's products are not infringing. (Mot. for Partial Summ. J. ("MPSJ") 3.) The Court finds that JSI is entitled to summary judgment on some, but not all, of Voxx's patent infringement claims.

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *See id.* On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.*
If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In evaluating the evidence presented in support of or in opposition to summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). However, conclusory or speculative testimony is insufficient to meet this burden or to raise genuine issues of fact defeating summary judgment. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

For a patent infringement summary judgment motion, there are two major standards by which the moving party may argue they are entitled to summary judgment: either non-infringement or invalidity of the nonmoving party's patents. *See Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129–30 (Fed. Cir. 2011); *Schering Corp. v. Geneva Pharmaceuticals, Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). Infringement is a question of fact; in order to enter summary judgment

against the patentee on the issue, a court must resolve factual inferences in favor of the patentee and determine that no reasonable jury could find that the moving party infringed. *Absolute Software, Inc.*, 659 F.3d at 1129–30. Infringement is determined where the claim has been properly construed and then compared to the accused device or process. *Id.* at 1129. Invalidity forecloses the infringement question because the underlying patent is unenforceable, due to either anticipation by prior art or a deficiency with the application. *Schering Corp.*, 339 F.3d at 1377.

**B.  Discussion**

Voxx asserts five patents in this suit: No. 5,775,762 ("the '762 Patent"); No. 7,245,274 ("the '274 Patent"); No. 7,839,355 ("the '355 Patent"); No. 7,050,124 ("the '124 Patent"); and No. 6,678,892 ("the '892 Patent"). JSI argues that it is not liable for infringement of any of them.

**1.  The '762 Patent**

The Court finds that JSI is not entitled to summary judgment as to the '762 Patent.

*i.  Factual Background*

The '762 Patent describes a video system and monitor that is mounted to the ceiling of the interior of a vehicle. (*See generally* the '762 Patent, ECF No. 134-3.) The console of the system includes a leading end, a trailing end, and an optional central section. (*Id.* Col 2:2–6.) The monitor, video source, and wiring for the entertainment system are all located within a console; however, the specification does not limit the console to a specific size or shape. (*See id.*)

In its claim construction Order, the Court construed two terms of the '762 Patent relevant to JSI's MPSJ. First, the Court determined that the term "elongated console housing" means "a console housing longer than it is wide." (Cl. Const. Order 19.) Further, the Court noted that "'[e]longated console housing' does not dictate the orientation of the console." (*Id.*) Next, the Court construed "a compartment for storing a source of video signals formed in the trailing end of the console housing" as

"a separate and partitioned space formed entirely within the trailing end of the console housing." (*Id.* at 20.)

JSI now argues that summary judgment is appropriate because its products do not include an "a console housing longer than it is wide" or "a separate and partitioned space formed entirely within the trailing end of the console housing." (MPSJ 4–5.)

### ii. *Analysis*

The Court is not convinced that JSI's products are free from overlap with the relevant definitions. First, JSI's argument that its products are not elongated completely ignores the definition of "elongated" detailed in the Court's claim construction Order. (*See* MPSJ 4.) The Court specifically ruled that "longer than it is wide" does not specify any particular orientation of the elongation. (Cl. Const. Order 19.) JSI argues that its products are "wider than they are long." However, such an observation necessarily requires a particular perspective of the axis of elongation. Therefore, if that perspective were flipped, the products could be longer than they are wide. And the Court specifically noted that the claim term does not dictate the orientation (or axis) of elongation. (Cl. Const. Order 19.) Therefore, the Court cannot determine as a matter of law that JSI's products do not fall within the claim term's definition.

Second, there is a triable issue of fact as to whether JSI's products have a separate and partitioned space formed entirely within the trailing end of the console housing. JSI claims that its accused products have only "a DVD player mounted to the housing by a mounting plate, clamps, and/or direct attachment." (MPSJ 4.) In contrast, Voxx claims that what JSI describes is in fact a separate and partitioned space within the Court's construal of the claim term. (Opp'n to MPSJ 6, ECF No. 140.) The relevant evidence, including the Patent language itself and JSI's photographs of the electrical components, demonstrates that the issue of infringement as to the separate and partitioned space is a question for the trier of fact. (*See* the '762 Patent; Nranian Decl. ¶¶ 12, 14, ECF No. 150-3.) The Court **DENIES** summary judgment as

to the '762 Patent.

Because the Court finds multiple triable issues of fact as to JSI's products' infringement of the '762 Patent, it need not consider whether JSI's products have a trailing end. (*See* MPSJ 5.)

**2. The '274 Patent**

The Court finds that JSI is entitled to summary judgment as to the '274 Patent.

*i. Factual Background*

The '274 Patent is a video system and monitor that is designed to be installed in the back of front-seat headrests in a vehicle, so that passengers in the back seats can view the screens. (*See generally* the '274 Patent, ECF No. 134-5.) The relevant term for this patent at the claim construction hearing was "accommodates," which the Court construed as "provides sufficient space for." (Cl. Const. Order 24–25.) In its Order, the Court also found that the claim term in context implicitly provides that it is the *base portion* of the claimed invention, and not the display/door, that accommodates (provides sufficient space for) a media player. (*Id.* at 25.)

Now, JSI argues that because its products incorporate a media player in the display, and not in the base portion, it cannot be liable for infringement based on the Court's construal of the term. (MPSJ 5–6.) Voxx argues in response that because the base portion receives the display when the unit is closed, the base portion itself provides sufficient space for the media player. (Opp'n to MPSJ 7.)

*ii. Analysis*

The Court views Voxx's argument as a transparent attempt to twist the previous construction. Voxx does not dispute that JSI's accused products house a media player within the display portion of the product, and not the base, but it contends that because the product's storage position *technically* involves the base enveloping the display and therefore the media player, that JSI's products are infringing. (*See id.*) The Court determines that no jury could find that JSI's products infringe within the plain meaning of the Court's construal of "accommodates." Therefore, the Court **GRANTS**

JSI summary judgment as to infringement of the '274 Patent.

### 3. The '355 Patent

JSI argues that it is entitled to summary judgment on grounds of both non-infringement and invalidity/unenforceability of this patent. (MPSJ 6–10.) The Court finds that JSI is not entitled to summary judgment on either ground.

#### *i. Factual Background*

Like the '274 Patent, the '355 Patent is also designed to be installed in the back of headrests. (*See generally* the '355 Patent, ECF No. 134-6.) At the claim construction stage, the terms at issue were "assembly housing" and "the face portion rests outside of the hole on an outside surface of the seat." (*See* Cl. Const. Order 30–32.) The Court decided that both terms should be given their plain and ordinary meaning. (*Id.*) Consistent with this, the Court noted that the term "outside" in its plain and ordinary meaning "does not mean 'within,' or even slightly within, with respect to the hole/recessed portion." (*Id.* at 32.)

#### *ii. Analysis*

JSI first argues that its products cannot infringe because all of the accused products are "countersunk so that the housings sit lower than the outside surface of a headrest after installation." JSI includes photos attached to the declaration of Arthur Chang that purport to demonstrate this feature. (Chang Decl. ¶¶ 16–22.) However, as Voxx points out, the "countersunk[en]" nature JSI's product housings is not entirely clear from those photos. (*See id.*, Opp'n to MPSJ 8–9.) Moreover, Voxx provides its own declaration and photos that appear to contradict JSI's contentions. (*See* Nranian Decl. ¶ 20, ECF No. 140-3.) Therefore, there appears to be a genuine issue of fact as to whether JSI's products infringe.

Second, JSI argues that the '355 Patent is invalid and/or unenforceable because Voxx failed to file the required oath when prosecuting the '355 Patent's application. (MPSJ 6–7.) Critical to this argument are two undisputed facts relevant to the '355 Patent. First, the '355 Patent resulted from what is known as a "continuation-in-part

application" ("CIP"). (*See id.* at 8–9; Opp'n to MPSJ 11); *Trustees v. VanVoorhies*, 278 F.3d 1288, 1297 (Fed. Cir. 2002) (naming elements of a continuation-in-part application). A CIP is where a patent application incorporates some claims from an earlier application as well as new claims not included in the earlier application. *See Trustees v. VanVoorhies*, 278 F.3d at 1297. In the case at bar, the original application was U.S. Patent Application No. 09/698,918 ("the '918 Application"), and the CIP was U.S. Patent Application No. 10/926,671 ("the '671 CIP"). The second important fact is that the relevant patent laws are those that were in place before Congress amended them with the America Invents Act ("AIA") in 2011—35 U.S.C. §§ 1 *et seq.* (2006) and 37 C.F.R. §§ 1 *et seq.* (2006).

An unique oath is required with each patent application under 35 U.S.C. § 111(a)(2)(c) (2006). *See* 35 U.S.C. § 115 (2006) (describing the required oath). Pursuant to 37 C.F.R. 1.63(e) (2006), this requirement includes CIPs; such applications must be executed with new oaths. The absence of any condition for patentability, such as the requirements of § 111, is grounds for a defense against infringement. 35 U.S.C. § 282(2) (2006).

The '671 CIP did not include a new oath. (*See* '918 Application, Ex. G, ECF No. 134-8; '918 Oath, Ex. F, ECF No. 134-7; '671 CIP Application, Ex. H, ECF No. 134-9.) Instead, it recycled a photocopied version of the same oath that was included in the '918 Application. (*See id.*)

While this MPSJ was pending, the Patent Trials and Appeals Board ("PTAB") ruled on JSI's Request for Rehearing pertaining to the '355 Patent. (*See* PTAB Ruling, ECF No. 144-1.) In its ruling, the PTAB explains that Voxx has now filed a supplemental corrected oath in place of the original deficient oath, and as such, the '355 Patent cannot be invalidated based on its original oath. (*Id.* at 3–5.) The PTAB draws authority for this decision from 37 C.F.R. § 1.67 (pre-AIA), which states that a supplemental oath may be submitted to correct any deficiencies or inaccuracies in the original oath.

The Court defers to the PTAB's ruling and finds that the originally defective oath cannot be a basis for invalidating the '355 Patent. Therefore, the Court **DENIES** JSI's MPSJ with respect to this patent.

### 4. The '124 Patent

The Court determines that summary judgment is appropriate as to this patent.

#### *i. Factual Background*

The '124 Patent describes a video entertainment system that can be transferred between vehicles and used in other settings. (*See generally* the '124 Patent, ECF No. 134-11.) In its claim construction Order, the Court construed the term "portable" in the '124 Patent as "easily transferable by a user between vehicles and other settings." (Cl. Const. Order 23–24.) Importantly, the Court decided that the word "portable" in the preamble language acts as a limitation on the patent as a whole, because it describes "what [the] claimed invention is or does." (*Id.* at 24.) Further, it ruled, "Voxx should not . . . be allowed to assert that 'portable' is only one intended use." (*Id.*)

JSI argues both non-infringement and invalidity as to this patent. However, because the Court reaches its decision based on non-infringement, it does not reach the issue of invalidity.

#### *ii. Analysis*

JSI argues that none of its products are portable within the meaning of the Court's construction, and therefore, that it is entitled to summary judgment on the issue of infringement of this patent. (MPSJ 11–12.) According to JSI, its accused products "are meant to be permanently mounted in a car and cannot easily be transferred to other vehicles." (*See id.* at 12; Chang Decl. ¶ 23.) In response, Voxx points out that it dropped its claims as to the clause of the '124 Patent that contains the term "portable." (Opp'n to MPSJ 21.) It retains its claims of infringement for independent claims not containing the term. (*See id.*) The problem is that this argument ignores the Court's decision that "portable," meaning "easily transferable by

a user between vehicles and other settings," acts as a limitation on the entire patent. (*See id.*) The Court explicitly determined that Voxx cannot assert other intended uses for the product that are incompatible with it being portable. (*Id.*) Further, Voxx has not provided any evidence to contradict JSI's assertion that JSI's products are not portable within the Court's ascribed meaning of the word. (*See* Opp'n to MPSJ 21–22; Chang Decl. ¶ 23 (explaining that JSI's accused products are meant to be permanently mounted in a car and are not easily transferrable by a user).) Thus, the Court **GRANTS** JSI summary judgment as to the '124 Patent.

### 5. The '892 Patent

The Court determines that summary judgment is appropriate as to this patent.

#### *i. Factual Background*

The '892 Patent also describes a video entertainment system, and it provides that the system and monitor can be installed in a variety of locations within a vehicle's interior. (*See generally* the '892 Patent, ECF No. 134-21.) The relevant claim term for purposes of this motion is "bus," which the Court defined as "one or more wires or other signal transmission means carrying similar types of signals." (*See* Cl. Const. Order 28–30.) JSI argues that this definition invalidates the '892 Patent because it invokes 35 U.S.C. § 112¶6 and is a "means-plus-function" term without a sufficiently definite structure. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (en banc) (defining a means-plus-function term).

#### *ii. Relevant Legal Standard*

Means-plus-function terms are a specific class of terms that are governed by 35 U.S.C. §112¶6. The first step in a §112¶6 analysis is to determine whether the statute applies to the claim at issue: it applies only to claims that describe a function of an invention without explicitly defining the structure with which to carry out the function. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1023 (Fed. Cir. 2006). If a claim uses the word "means" in connection with a function of the invention, a rebuttable presumption arises that §112¶6 applies. *Callicrate v.*

*Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1368 (Fed. Cir. 2005). If the claim term lacks the word "means," the term will be construed under § 112¶6 only if the challenging party can show that the claim fails to describe a sufficiently definite structure (or means) for performing the described function. *Williamson*, 792 F.3d at 1349.

If it is determined that § 112¶6 applies, the second step is interpretation. *See JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005). The first aspect of interpretation is that the court must identify the function of the claim term. *Id.* Then, the court must identify the corresponding structure by looking at any structures described in the specification. *Callicrate*, 427 F.3d at 1369. If the specification does not provide corresponding structure for the claimed function, then the claim is invalid as indefinite. *Williamson*, 792 F.3d at 1352.

### *iii. Analysis*

JSI's argument is that because the Court's definition of "bus" includes the word "means," § 112¶6 applies, and there is no corresponding structure for "other signal transmission means." Voxx counters that there is no legal authority for the idea that a Court's construction containing the word "means" can invoke § 112¶6 where the claim itself does not include the word. (*See* Opp'n to MPSJ 23–24.) In support of this argument, it cites *Acacia Media Technologies Corp v. New Destiny Internet Group*, No. C 05-01114, 2007 WL 7681250, at *5 (N.D. Cal. Oct. 19, 2007). The court in *Acacia Media* considered whether a term it construed to include the word "means" would be governed by 35 U.S.C. § 112¶2, and it decided that it would not, because the claim term at issue did not contain the elements of a means-plus-function claim. *Id.* Voxx argues that the word "means" in *Acacia Media* was used only as a "tag word," preceded by a modifier—and that "means" is used in the definition of "bus" in the same way. (*See* Opp'n to MPSJ 24.)

In its Reply, JSI points out that the *Acacia Media* court actually vacated its construction involving the word "means" and adopted a new construction. (Reply 12, ECF No. 146.) Further, JSI notes that later in the same case, the court found that its

new construction (which was "transmission system") required a structure that was not written into the claim, and thus it invalidated the claim. (*Id.*; *see In re: Acacia Media Techs. Corp.*, No. 05-01114, Dkt. 354, Slip. Op. at 3–4, Ex. H, ECF No. 146-9.)

The Court agrees that words applied to a term at the claim construction stage can invalidate that term if indefinite. This is what occurs here. Voxx attempts to convince the Court that it is "readily understand[able]" to one skilled in the art that "other transmission means carrying similar types of signals" could include "coaxial cables, ribbon cables, balanced cables, unbalanced cables, SCART cables, composite video cables . . . and so forth . . . ." (Opp'n to MPSJ 23.) However, the only structure described in the specification is wires. (*See* the '892 Patent.) The Court cannot allow Voxx to have its claim term include a "means" that is unbounded to any particular structure in the specification. *See Med. Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003). As Voxx has not rebutted the presumption that arises when "means" is part of a claim term (or construed to be part of the meaning of a claim term), and there is no structure corresponding with "other transmission means carrying similar types of signals," the Court finds the term indefinite. Therefore, the Court **GRANTS** JSI's motion for summary judgment as to the '892 Patent.

## V. VOXX'S MOTION TO DISMISS

In its Motion to Dismiss, Voxx seeks dismissal of JSI's counterclaim seeking a declaration that the '124 Patent is not infringed and/or invalid. (Mot. to Dismiss 1; Pl. First Am. Countercl. 26–28, ECF No. 108.) Because the Court has already entered summary judgment in favor of JSI as to the '124 Patent, it **DENIES AS MOOT** Voxx's Motion to Dismiss.

## VI. JSI'S MOTION TO STAY

Finally, JSI requests that the Court stay Voxx's counterclaims of patent infringement. (Mot. to Stay 1.) The nature of JSI's requested relief in connection with this motion is unclear. It appears in one sense that JSI wishes to have Voxx's

counterclaims for infringement stayed prior to the Court ruling on JSI's pending MPSJ, but on the other hand, JSI discusses the prudence of a "bifurcation and rescheduling of a separate trial for any of Voxx's patent infringement counterclaims that *survive* summary judgment." (Mot. to Stay 3 (emphasis added); 9.) JSI originally set the hearing date for the Motion to Stay prior to the hearing date for its MPSJ, but then it later stipulated to hear both motions on the same date. (*Id.* at 9; ECF No. 123.) The Court determines that ruling on JSI's summary judgment is appropriate at this stage, rather than staying Voxx's claims and waiting to rule on the motion. As the Court ruled in granting JSI leave to file for summary judgment in the first place, the case is ripe for summary adjudication. (ECF No. 106.) As such, the issue of a stay is mostly moot, and the Court finds that a stay is not warranted.

### A. Legal Standard

A court may stay an action or part of an action where doing so would serve the interests of judicial economy and efficiency. *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). When considering a stay, a court should consider three factors: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved." *Id.*

### B. Discussion

JSI's argument mostly focuses on judicial resources that would be saved if the Court institutes a stay of Voxx's counterclaims. (*See* Mot. 10–11.) In its Reply, it writes, "it is undeniable that disposing of half of the patents in a 10-patent infringement case would simplify the trial of this lawsuit." (Reply 1, ECF No. 131.) While staying Voxx's counterclaims would certainly simplify the trial of JSI's claims, it would not lead to a net conservation of judicial resources, as the Court would have to conduct an entirely separate trial for Voxx's claims rather than dealing with all claims in one proceeding. JSI and Voxx's arguments regarding prejudice to either side if a stay were or were not entered center mostly around conservation of their own

resources, as well as Voxx's claim that a key witness might not be available if trial of its counterclaims is delayed. (*See* Opp'n to Mot. to Stay 7–8, ECF No. 129.) Neither side convinces the Court that potential prejudice alone should or should not warrant a stay, and thus, the Court decides the issue solely based on the conservation of judicial resources factor. As such, the Court **DENIES** JSI's Motion to Stay.

JSI's alternate request for a stay based on the *Lowery* factors is moot in light of the Court's decision to rule on the MPSJ. (*See* Mot. to Stay 13–15); *Lowery v. FFA*, No. CIV.S93 1352EJG/GGH, 1994 WL 912632, at *3 (E.D. Cal. Apr. 11, 1994).

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Voxx's Motion to Consolidate (ECF No. 122), **GRANTS IN PART AND DENIES IN PART** JSI's Motion for Partial Summary Judgment (ECF No. 134), **DENIES AS MOOT** Voxx's Motion to Dismiss (ECF No. 119), and **DENIES** JSI's Motion to Stay (ECF No. 117).

**IT IS SO ORDERED.**

April 17, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**